## INSURANCE COMPANY *v.* FOGARTY.

1. The cases in reference to the line of distinction between a total and a partial marine loss examined, and the principle announced that it is not necessary to a total loss that there should be an absolute extinction or destruction of the thing insured, so that nothing of it can be delivered at the point of destination.

2. A destruction in specie, so that while some of its component elements or parts may remain, while the thing which was insured, in the character or description by which it was insured, is destroyed, is a total loss.

3. Hence, where machinery was insured, to wit, the parts of a sugar-packing machine, and no part of the same was delivered in a condition capable of use, it is a total loss, though more than half the pieces in number and value may be delivered, and would have some value as old iron.

ERROR to the Circuit Court for the Southern District of New York.

Fogarty sued the Great Western Insurance Company on a policy of marine insurance and recovered a judgment for $2611.95 and costs. The policy was an open one, and the indorsement procured by the plaintiff on it was of insurance for $2250, on machinery on board the bark Ella Adele, at and from New York to Havana, free from particular average. The memorandum clause of the policy provided that ma-

chines and machinery of every description were warranted by the assured free from average unless general. The machinery insured consisted of the various parts necessary for a complete sugar-packing machine, including, as part of it, three sets of truck-irons, and also other extra truck-irons. It was described in the bill of lading and invoice as eight pieces and eight boxes, composing one sugar-packer and three trucks.

The vessel on which these articles were being transported from New York to Havana, just before reaching the latter city, was driven on rocks in a violent gale, was filled with water, and finally became a total wreck, and was abandoned to the underwriters. Their agent at Havana took possession, and was engaged about a month in raising the cargo. A large number of the pieces composing the plaintiff's machinery was recovered and tendered to him at Havana, which he refused to receive, on the ground that the insurance company was liable to him as for a total loss. They denied that under the circumstances of the case there was a total loss within the meaning of the policy; and the soundness of the instruction to the jury on that point, given and refused by the Circuit Court on the trial, was the only question now before this court.

There was very little conflict of testimony as to what was recovered and what was its condition when tendered to plaintiff. It was all of iron  About half of it in weight was saved, and the remainder left at the bottom of the sea. That which was saved was entirely useless as machinery, and was of no value except as old iron, for which purpose it would sell for about $50. The machinery in working order was worth $2250. That which was saved was much broken and rusted, so that it would cost more to repair it, polish it, and put it in order for use than to buy a new machine.

Upon the testimony offered by the plaintiff the counsel for the defendant moved the court to instruct the jury that the action could not be sustained, because it showed that there was not a total loss. The court declined to do this, and the request was renewed at the conclusion of the de-

fendant's evidence, and again declined.  Several prayers for instruction were then presented by the defendant, based upon the leading proposition, that if any of the pieces of the machinery insured was recovered and tendered in specie to the assured, there was no total loss.  These were refused and exceptions taken to all these refusals, on which error is assigned here.  An exception was also taken as to the charge of the court laying down the law by which the jury were to decide the question of total loss submitted to them.  That charge was in the following words:

"The meaning of the term 'free from particular average,' used in the policy, was that the defendants should be liable only for a total loss of the subject insured; that the subject insured was not machines but machinery, by which is generally understood the several parts or portions of machines, adapted and fitted to be put together so as to constitute a machine (in this case a sugar-packing machine), and, applying the rule of law as to what constitutes a total loss to this particular subject insured, the jury will find whether any piece or portion of the machinery insured arrived at its destination in a perfect condition, so that it could have been used with its corresponding or connecting pieces had they also arrived in good condition; in that case the plaintiffs could not recover, as the loss would not be total; but that if every piece of the machinery was so damaged by the perils insured against as to be entirely unfit for use on being supplied with its corresponding or connecting pieces, then there was a total loss of the subject insured as machinery, although the material itself might still exist; and if they so found, they would find a verdict for the plaintiff for the sum named in the policy with interest from the tenth day of September, 1868."

Verdict and judgment having gone for the plaintiff, the insurance company brought the case here.

*Mr. W. M. Evarts, for the plaintiff in error ; Mr. S. P. Nash, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The question presented in this case for consideration has been often in the courts, and the discriminations between

what is total loss and what is not are frequently very nice and delicate. The authorities are by no means uniform or consistent with each other, when, as in the present case, the line of distinction is very narrow. Several cases bearing upon the one before us have been decided in this court, and perhaps a short review of them may aid us here better than a more extended examination of the numerous other authorities on the subject.

In the case of *Biays* v. *Chesapeake Insurance Co.,** the plaintiff was insured upon hides, the whole number of which was 14,565. Of these, 789 were totally lost by the sinking of a lighter, and 2491 of those sunk were fished up in a damaged condition and sold. The hides were memorandum articles, and this court held that inasmuch as less than 800 hides insured as part of a much larger number of the same kind was lost, it could not be a total loss, and overruled the argument that it was a total loss as to the 789 hides.

In the case of *Marcardeir* v. *Chesapeake Insurance Co.,*† it is said that "it seems to be the settled doctrine that nothing short of a total extinction either physical or in value of memorandum articles at an intermediate port would entitle the insured to term the case a total loss, where the voyage is capable of being performed. And perhaps even as to an extinction in value, where the commodity *specifically* remains, it may yet be deemed not quite settled whether, under like circumstances, it would authorize an abandonment for a total loss."

In the case of *Morean* v. *The United States Insurance Co.,*‡ more than half of a cargo of corn was thrown overboard and lost. The remainder was saved in a damaged condition and sold at about one-fourth the market value of sound corn. This was held not to be a total loss, because part of the corn was saved, and though damaged was of some value. It was, therefore, only a partial loss.

The next case is that of *Hugg* v. *The Augusta Insurance Co.*§

---

* 7 Cranch, 415.                    † 8 Id. 47.
‡ 1 Wheaton, 219.                 § 7 Howard, 595.

The question there arose on an insurance of jerked beef of four hundred tons, part of which was thrown into the sea and part of the remainder so seriously damaged that the authorities of the city of Nassau refused to allow more than 150 of it to be landed. This was wet and heated, and not in a condition for reshipment. In answer to a question on this subject, certified to this court by the judges of the Circuit Court, it was replied, " that if the jury found that the jerked beef was a perishable article within the meaning of the policy, the defendant is not liable as for a total loss of the freight, unless it appears that there was a destruction in *specie* of the entire cargo so that it had lost its original character at Nassau, or that a total destruction would have been inevitable from the damage received if it had been reshipped before it could have arrived at Matanzas, the port of destination." And though there are some very strong expressions of the judge who delivered the opinion as to the necessity of the total destruction of the thing insured to establish a total loss in memorandum articles, no doubt the language here certified is the true expression of the court's opinion. And it will be observed that in this case, as in the case of *Marcardeir* v. *Chesapeake Insurance Co.*, the destruction spoken of is destruction as to species, and not mere physical extinction. Indeed, philosophically speaking, there can be no such thing as absolute extinction. That of which the thing insured was composed must remain in its parts, though destroyed as to its specific identity. In the case of the jerked beef, for instance, it might remain as a viscid mass of putrid flesh, but it would no longer be either beef or jerked beef. And when the case went back for trial in the Circuit, the charge of Taney, C. J., to the jury places this point in a very clear light.* He says there was not a total loss at Nassau, because a part of the jerked beef remained in specie, and had not been destroyed by the disaster. And if there was reasonable ground for believing that a portion of this beef could, by repairing the vessel, have been transported to

---

* Taney's Decisions, 168.

Matanzas, although it might arrive there in a damaged condition, but yet retaining *the character of jerked beef*, there was no total loss. The jury found there was a total loss. The case of *Judah* v. *Randal*,* where a carriage was insured and all was lost but the wheels, is another illustration of the principle. A part of the carriage, namely, the wheels, a very important part, was saved; but the court held that the thing insured, to wit, the carriage, was lost—that it was a total loss. Its specific character as a carriage was gone.

In the case of *Wallerstein* v. *The Columbian Insurance Co.*,† the whole doctrine is ably reviewed with a very full reference to previous decisions, and it is there shown that there is far from unanimity in the language in which the rule is expressed; and the extreme doctrine of an absolute extinction or destruction of the thing insured is not the true doctrine, or, at least, is not applicable in all cases as a criterion of total loss.

The Circuit Court was right in holding that what was insured was machinery—pieces or parts of a machine—pieces made and shaped to unite at points with other pieces, so as to make a sugar-packing machine. If parts of them were absolutely lost, and every piece recovered had lost its adaptability to be used as part of the machine; had lost it so entirely that it would cost as much to buy a new piece just like it, as to repair or adapt that one to the purpose, then there was a total loss of the machinery. If no piece recovered was of any use, or could be applied to any use connected with the machine of which it was a part, without more expense on it than its original cost, then there was no part of the *machinery* saved, however much of rusty iron may have been taken from the wreck. The court went quite as far in behalf of the defendant as the law justified, when it told the jury that the plaintiff could not recover if any piece or portion of the machinery insured arrived at its destination in a condition so perfect that it could have been used with its corresponding or connecting pieces, had they also arrived in good condition.

* 2 Caine's Cases, 824.    † 44 New York, 204.

We are of opinion that the charge of the court put the case very fairly to the jury, as we understand the law, and the judgment is, therefore,

AFFIRMED.