[No. 6,354.]

## WILLIAMS ET AL. v. THE HARTFORD INSURANCE COMPANY.

INSURANCE—CONSTRUCTION OF POLICY.—A policy of insurance on a building contained the following provision: "Damage to property not totally destroyed, unless the amount of such damage is agreed upon between the assured and the company, shall be appraised by disinterested and competent persons mutually agreed upon by the parties; when personal property is damaged, * * * the assured shall make an inventory thereof, * * * and upon each article the damage shall be separately appraised, and the detailed report of the appraisers, under oath, shall form a part of the proofs herein required; * * * *and until such proof and certificates are produced,* * * * *the loss shall not be payable.*" In an action upon the policy: *Held,* 1st. That this clause, even if sufficiently definite to be of any validity, (which is doubted) has no application in a case like the present, where the principal dispute is, whether a total or only a partial destruction of the building resulted from the fire; and 2nd. That the provision that the loss shall not be payable until the production of the proof and certificates mentioned, applied only to personal property.

ID. — WAIVER. — The non-production or insufficiency of the preliminary proofs of loss required by a policy, will be deemed waived by the insurers, if their conduct is such as to render the production or correction useless or unavailing, or, as to induce in the mind of the insured a belief that no proof will be required, or that those already furnished, though in fact defective, are satisfactory, and therefore sufficient.

ID.— EVIDENCE — PRELIMINARY PROOFS — INSURANCE.—In an action upon a policy of fire insurance, the preliminary proofs of loss—though not competent evidence of the amount of loss—are admissible in evidence, for the purpose of showing a compliance with the conditions of the policy.

ID.—ID.—INSTRUCTIONS.—When testimony offered is admissible for one purpose, but is incompetent for another, it is the duty of the objecting party to ask an instruction, limiting the evidence to the purpose for which it is competent, and if he fails to do so, he cannot afterward complain; and unless requested to do so, the Court is not bound to give any instructions to the jury.

ID.—TOTAL LOSS—DEFINITION.—A total loss does not mean an absolute extinction. In reference to a building, therefore, the question is not whether all the parts and materials composing it are absolutely or physically destroyed, but whether, after the fire, the thing insured exists as a building? An insurance upon a building is an insurance upon the building as such, and not upon the materials of which it is composed.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Fourth District Court, City and County of San Francisco. MORRISON, J.

The facts are stated in the opinion.

*Gray & Haven*, for Appellant.

The stipulation in the policy that " damage to property not totally destroyed, * * * shall be appraised by disinterested and competent persons mutually agreed upon by the parties," is a *condition precedent* to the right to bring the action, where a demand is made for such appraisal.

The policy of insurance provided that, in case of loss, the insured should render to the company a verified statement, showing " the whole value and ownership of the property, and the amount of loss or damage." It also provided that " damage to property not totally destroyed shall be appraised by disinterested and competent persons mutually agreed upon by the parties, * * * and the detailed report of the appraisers in writing, under oath, shall form a part of the proof hereby required; * * * and until such proof and certificates are produced, * * * the loss shall not be payable." No such statement or certificate was produced.

The Court erred in submitting to the jury, as evidence of the amount of loss, (against the objection of defendant) the *ex parte* statement of plaintiff Williams, with the estimates of loss attached. This paper constituted one of the preliminary proofs of loss. Its legal effect ceased when presented to defendant for that purpose. It could not be used as evidence on the trial *as to the amount of loss.* (*Cone* v. *Sennett*, 41 Penn. St. 161; *Lycoming Ins. Co.* v. *Schreffler*, 42 Id. 188 ; S. C. 44 Id. 269; *Newark* v. *Liv. & London Ins. Co.* 30 Mo. 160; *Southern Ins. and Trust Co.* v. *Lewis*, 42 Ga. 587; *Lycoming Ins. Co.* v. *Rubin*, 8 Chicago Legal News, 150; *Citizens' Fire Ins. Security Co.* v. *Doll*, 35 Md. 89; 6 Am. Rep. 360.)

*G. W. Gordon*, and *John Garber*, for Respondent.

The appellant's principal exceptions are cut off by the special finding of *total destruction.* The finding of the jury negatives the very fact upon which appellant's grounds for reversal are predicated, to wit, a partial destruction only of the building; and the testimony being conflicting upon the question of a total or

partial destruction, the finding will not be reviewed by this Court.

Under all the terms of the policy construed together, an appraisal of damage, even though the building had not been totally destroyed, was not a condition precedent to the suit. * * * 2nd. Because the clause with reference to a detailed report of the appraisers, after examination, etc., and that the loss was not payable until such was permitted, made, and produced, had application only to personal property, and cannot reasonably be construed to include real estate. * * * 4th. Because the reference clause, entered into in this case, presupposed the case of something to refer—implied a mutual understanding as to the *fact* of a partial destruction only—and could have no application to a condition of things where *such agreement was an impossibility*, and arbitration a farce. A different construction would put the assured at the mercy of the insurer.

The instructions of the Court with regard to the character of the loss—whether total or partial—were correct. (*Nave* v. *Home Mut. Ins. Co.* 37 Mo. 430 ; *Huck* v. *Globe Ins. Co.* Mass. Sept. 7th, 1879, reported in Ins. Law Jour. Dec. 1879, p. 912; *Ins. Co.* v. *Fogarty*, 19 Wall. 645 ; *Wallestein* v. *Columbian Ins. Co.* 44 N. Y. 217.)

Department No. 1, Ross, J.:

This is an action upon a policy of fire insurance upon the plaintiff's undivided half interest in a brick building situated in Virginia City, Nevada. The plaintiff recovered a verdict for four thousand five hundred dollars. Defendant moved for a new trial, which was denied, and brings this appeal from the judgment and the order refusing a new trial.

The policy contained, among other clauses, the following: "Damage to property not totally destroyed, unless the amount of said damage is agreed upon between the assured and the company, shall be appraised by disinterested and competent persons mutually agreed upon by the parties: when personal property is damaged, the assured shall put it in the best order possible, and make an inventory thereof, naming the quantity and

cost of each article, and upon each article the damage shall be separately appraised, and the detailed report of the appraisers in writing, under oath, shall form a part of the proofs hereby required, each party paying one-half the expenses of the appraisals; and until such proof and certificates are produced, and examination and appraisal permitted, the loss shall not be payable. And the company reserves the right to take any part or all of the property appraised, paying market value therefor, in case the damage as appraised is deemed excessive."

The main contest between the parties at the trial in the Court below was whether a *total* or only a *partial* destruction of the building had resulted from the fire: the defendant contending that the destruction had been partial only; and further contending that under the clause of the policy just quoted no right of action existed in plaintiffs, as they had refused to join in an appraisal of damage, which defendant claimed to be a condition precedent to suit. We will consider this point first.

It is very doubtful whether the clause in question is sufficiently definite to be of any validity. It provides that when the property there referred to is not totally destroyed, the damage, if not agreed upon between the assured and the company, shall be appraised, a report of the appraisement made in writing under oath, etc., and that until the report is produced the loss shall not be payable. But how is the appraisement to be made? "By disinterested and competent persons mutually agreed upon by the parties." No number of appraisers is fixed, no mode of selection provided. Either party might withhold his or its assent to the appraiser or. appraisers suggested by the other; or the company might suggest one number of appraisers, and the assured another number. In either case, and in others that might be supposed, no appraisement could be made by "persons mutually agreed upon by the parties."

Again: take the very case now here, where the principal dispute is whether a total or only a partial destruction of the building resulted from the fire. If, as is claimed by plaintiffs, there was a total destruction, then clearly there would be nothing to arbitrate, for the clause under consideration only purports to provide for the appraisement of the damages to property "not

totally destroyed." On the other hand, the company says there was but a *partial* destruction. This radical difference between the parties as to the main fact would, of course, render an arbitration impossible. The provision of necessity presupposes a concession by both parties that the property is *not* totally destroyed. It is obvious, therefore, that if the clause in question is not void for uncertainty, it has no application in a case like the present. Otherwise, before the assured could come into court at all, he would be forced to concede the very point in dispute, namely, that the property was not totally destroyed. But for another reason we think the clause has no application to this case. It provides, as has been observed, that the detailed report of the appraisers shall form a part of the proof required; and that, until such proofs and certificates are produced and examination and appraisal permitted, the loss shall not be payable. The "detailed report of the appraisers," here spoken of, manifestly relates to the personal property the assured is required to put in the "best possible order," and of which he is to "make an inventory, naming the quantity and cost of each article, and upon each article," of which it is provided, "the damage shall be separately appraised." That this is the true construction is made clear by the concluding sentence of the clause, which is in these words: "And the company reserves the right to take any part or all of the *property appraised*, paying market value therefor, in case the damage as appraised is deemed excessive." This portion of the clause in terms relates to *all* property for which appraisement is provided. If real property is included within it, let us see what absurd consequences would follow. A building is insured, as was the case at bar. The building is erected upon land, and is a part of the realty. A portion of the building is burned—it is "not totally destroyed." The damage is appraised, but "the damage as appraised is deemed excessive." In such case "the company reserves the right to take any part or all of the property appraised, paying market value therefor." But since it was the building alone that was insured, it could only be the damage to the building that could be appraised, and that would be the property the company reserved the right to take at its market value. But

the building pertains to the land—it is a part of the realty. The company did not insure the land and could not have it appraised, and could not take it at its market or other value. How could it take the building? This, of course, leads to an absurdity; but it is the logical result of the construction contended for by the appellant, and it goes to show that it was never intended or contemplated by the parties to the contract that the clause under consideration should relate to any other than personal property.

The policy further provided, that in case of loss the insured should render to the company a verified statement showing " the whole value and ownership of the property and the amount of loss or damage "; and further, that " in no case shall the claim be for a greater sum than the actual damage to or cash value of the property at the time of the fire." It was contended by the defendant that this condition of the policy requiring proofs of loss was not complied with, and hence that the action could not be maintained.

The fire occurred October 26th, 1875, and on the 6th of November plaintiffs furnished defendant with a verified statement of the loss, claiming a total destruction of the building, and to be entitled to the full amount of the insurance—$5,000—and setting forth the matters by the policy required to be stated. The statement was accompanied by a " Builder's estimate of damaged building owned by Williams, Bixler, and Douglass," which contained a general description of the building, and an estimate of the materials, labor, etc., amounting in the aggregate to $11,214. This estimate was signed by Winchell, architect, and Thexton, builder, and was verified by them as follows: " We, J. K. Winchell and J. M. Thexton, having made and signed the foregoing estimate, do, each of us, and each for himself, solemnly swear that we are not interested either directly or indirectly in the property to which the within estimate relates, or related to the owner thereof; that said estimate is a true, conscientious, and impartial exhibit of quantities and prices as therein described, based upon the cash value of materials and labor at the date of said fire, according to the best of our knowledge, skill, and judgment. And we verily believe that the

actual cash value of the within described building was not less then eleven thousand two hundred and fourteen dollars, exclusive of the land upon which it was situated at the time of its damage or destruction."

The objection made by the defendant at the trial to the proof of loss, so far as it bears upon the point now under consideration, was that "the said statement of loss was an estimate for an entire new building, including new walls entire, and new iron-work throughout, and no allowance or deduction was made for the brick in the standing walls, or for the iron doors and window shutters." Defendant's counsel are mistaken in supposing that the estimate was for "an entire new building." It was an estimate of the value of the entire *old* building; for the architect and builder say in their affidavit that they "verily believe that the actual cash value of the within described building (the building mentioned in the estimate) *was* not less than eleven thousand two hundred and fourteen dollars, exclusive of the land upon which *it was* situated at the time of *its damage or destruction.*"

But even if the proofs, when furnished, were insufficient, such fact would be immaterial as the case comes before us. For there was testimony given on behalf of plaintiffs, tending to show a waiver in this regard on the part of defendant, and although the testimony upon this point was somewhat conflicting, the jury, under proper instructions, found for plaintiffs, and we will not disturb the verdict on that ground.

In May on Insurance, § 468, it is said: "But the incompleteness and even non-production of all preliminary proof may be waived, and will be excused on the ground of waiver by the insurers, if their conduct is such as to render the production or correction useless or unavailing, or as to induce in the mind of the insured a belief that no proofs will be required, or that those already furnished, though in fact defective, are satisfactory, and therefore sufficient. If the insurers intend to insist upon defects in the preliminary proof, they should indicate their intention in such a way that the insured may not be deceived into a false security, and at such time that he shall have opportunity to supply the defects. If they wish further in-

formation, they should point out in what respect, or they will be presumed to be content with what has been furnished."

Another point made by counsel is, that the Court "erred in submitting to the jury, as evidence of amount of loss," the preliminary proofs above alluded to. It does not appear from the record that the Court did submit such proofs to the jury as evidence of the amount of loss. They were admitted in evidence, it is true. But the policy required such proofs to be made to the company, and one of the issues made by the pleadings in this case was as to whether the proofs had been in fact made. It was, therefore, necessary for plaintiffs, in order to maintain the action, to prove that they had made them, or else to show a waiver; and the best evidence of the proofs was the proofs themselves. They were clearly admissible for the purpose of showing a compliance by the assured with the conditions of the policy in that respect, and it is equally clear that they were not competent evidence of the amount of loss.

But it is the established rule in this State that when testimony offered is admissible for one purpose, but is incompetent for another, it is the duty of the objecting party to ask an instruction limiting the evidence to the purpose for which it is competent, and if he fails to do so he cannot afterward complain. (*People* v. *Collins*, 48 Cal. 277; *People* v. *Estrada*, 49 Cal. 171.) No such instruction was asked by defendant in the present case. Unless requested to do so, the Court is not bound to give any instructions to the jury. (*Carter* v. *Bennett*, 4 Fla. 283; *Averett* v. *Brady*, 20 Ga. 523; *Wood* v. *Figard*, 28 Pa. St. 403; *Ward* v. *Howard*, 4 Jones, 23; *Briggs* v. *Byod*, 12 Ired. 377; *Jones* v. *State*, 20 Ohio, 34; *Taft* v. *Wildman*, 15 Ohio, 123.)

Upon the question of the extent of the loss, the plaintiff Williams testified as follows: "The building was entirely burned out. It had every appearance of being a fire of great heat. Portions of the old wall were standing—that is, in position; they were all cracked and warped; wherever joists had been in, they were badly torn out, apparently from the falling of the joists. It was so perfect a destruction, that I, as well as the architect who examined it with me, placed it as a total de-

struction, that it was perfectly worthless as a building. In my own mind I deemed the building worthless. That which was left standing would just amount to *débris*. It was a wall which was unfit for use with any safety. I thought we would have to tear it down to make a new wall. It would have to be torn down and replaced; that is, another wall built in its place. I have been an extensive builder. * * * The shutters were warped and blistered, and injured to such an extent that I considered them perfectly worthless for any purpose, even as old iron, unless you might get some of the bands on the wrought-iron portion. The balance of the iron-work—the pillars, for example, they were all warped so much that, while you might use them, you could not use them to make a perfect wall as it was before; hence, I class that simply as old iron." The witness further testified, that after the fire he sold his interest in the ground upon which the building had been erected, to one Douglass, and told him, so far as the old *débris* was concerned, he could take it, that he did not care anything about it. There was some testimony given conflicting with that of Williams, already stated, and some given in support of it. The evidence was also conflicting upon the question of the value of the property destroyed. There was no conflict, however, in the evidence as to the fact that after Douglass purchased, he rebuilt, and in doing so used some of the remnants of the old building. At the request of defendant, the Court below submitted to the jury the following special issue: "Was the building insured by the defendant totally destroyed?" to which they answered in the affirmative. This finding will conclude the defendant unless the jury was erroneously instructed upon the question. The charge of the Court was lengthy, but the gist of it upon this proposition is embodied in the following extract: "A total loss does not mean an absolute extinction. The question is not whether all the parts and materials composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Although you may find the fact that after the fire a large portion of the four walls were left standing, and some of the iron-work still attached thereto, still if you find that the fact is that the building has lost its

identity and specific character as a building, you may find that the property was totally destroyed within the meaning of the policy."

We think there was no error in the instruction. In *Nave* v. *Home Mutual Insurance Company*, 37 Mo. 430, it was held that a policy of insurance upon a building is an insurance upon the *building as such*, and not upon the material of which it is composed. (See, also, *Huck* v. *Globe Insurance Company*, Mass., reported in Insurance Law Journal, December, 1879, p. 912.)

In *Insurance Company* v. *Fogarty*, 19 Wall. 644, which was an action on a policy of *marine* insurance, the Supreme Court of the United States held that the doctrine of an absolute extinction of the thing insured is not the true doctrine, even in that class of cases, where the rule is stricter than in cases like the present. In the course of the opinion, in speaking of the case of *Hugg* v. *The Augusta Insurance Company*, 7 How. 595, where there was an insurance of jerked beef of four hundred tons, part of which was thrown into the sea, and part of the remainder so seriously damaged that the authorities of the City of Nassau refused to allow more than one hundred and fifty tons of it to be landed, the Court say : "It will be observed that in this case, as in the case of *Morcardier* v. *Chesapeake Insurance Company*, 8 Cranch, 47, the destruction spoken of is destruction as to species, and not mere physical extinction. Indeed, philosophically speaking, there can be no such thing as absolute extinction. That of which the thing insured was composed must remain in its parts, though destroyed as to its specific identity. In the case of the jerked beef, for instance, it might remain as a viscid mass of putrid flesh, but it would no longer be either beef or jerked beef. * * * The case of *Judah* v. *Randall*, 2 Caines' Cases, 324, where a carriage was insured and all was lost but the wheels, is another illustration of the principle. A part of the carriage, namely, the wheels, a very important part, was saved; but the Court held that the thing insured, to wit, the carriage, was lost—that it was a total loss. *Its specific character as a carriage was gone.*"

We discover no error in the record entitling defendant to a new trial.

Judgment and order affirmed.

McKINSTRY, J., and McKEE, J., concurred.