FIRE ASS'N OF PHILADELPHIA v. STRAYHORN.

(Court of Civil Appeals of Texas. Amarillo. March 21, 1914. Rehearing Denied April 18, 1914.)

1. APPEAL AND ERROR (§ 938*) — PRESUMPTIONS — EXTENSION OF TIME FOR FILING BILL OF EXCEPTIONS—EXISTENCE OF GOOD CAUSE.

Where the trial court, authorized on good cause shown to extend the time for the filing of bills of exception, extended the time, the court on appeal, in the absence of a contrary showing, will presume that good cause was shown, and bills of exception, filed within the time as extended, must be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3795–3803; Dec. Dig. § 938.*]

2. PLEADING (§ 279*) — SUPPLEMENTAL PETITION—NEW CAUSE OF ACTION.

Where insured, in a fire policy, sought a recovery only for the destruction of a concrete building covered by the policy, and made no claim for injury by fire to an iron building, and insured sought to avoid liability by reason of additional insurance on the iron building, a supplemental petition, alleging that the policy was intended not to cover the iron building, and that, if it did cover it, it was a fraud, did not set up a new cause of action, but was an answer which, if supported by evidence, prevented insurer from defeating a recovery by setting up a contract which was never made, or, if made, was fraudulent.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 836–841; Dec. Dig. § 279.*]

3. INSURANCE (§ 669*)—FIRE INSURANCE—EVIDENCE—INSTRUCTIONS.

Where, in an action on a fire policy covering a concrete building, insured's evidence showed that the standing walls could not be utilized for reconstruction, and insurer showed that certain portions could be used, but did not show what it would cost to put them in a condition on which to place a building, or the value of the walls, or the extent of the depreciation in the building, a charge that a building is not a total loss so long as its identity is left, and so long as the remnant may be reasonably adapted for use on which to restore the building, but a building is a total loss unless the remnant is of that substantial character that, if the same was restored or repaired, it would be considered the old structure and not a new building, was sufficiently favorable to insurer in defining total loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1771–1784; Dec. Dig. § 669.*]

4. INSURANCE (§ 598*)—FIRE INSURANCE — LIABILITY—INTEREST.

Where an insured building is destroyed, the amount of the policy is due when the loss occurred, and it will bear interest from that date, though the policy provides that any sum for which insurer may be liable will not be due until 60 days after proof of loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1494; Dec. Dig. § 598.*]

Appeal from District Court, Scurry County; Jno. B. Thomas, Judge.

Action by Joe Strayhorn against the Fire Association of Philadelphia. From a judgment for plaintiff, defendant appeals. Affirmed.

Crane & Crane, of Dallas, for appellant. Beall & Beall, of Sweetwater, and Perkins & Perkins, of Snyder, for appellee.

HUFF, C. J. The appellee, Joe Strayhorn, sued the appellant, the Fire Association of Philadelphia, on a fire insurance policy, alleging that appellant insured him from loss by fire, not to exceed $4,500, on his gravel-roof, concrete building located on lot 2, block 3, in the Blankenship addition to the town of Snyder, and alleged the destruction of the building by fire on the 19th day of December, 1911.

The appellant, by answer, replied: That it agreed to insure the appellee against all direct loss by fire to his one-story gravel-roof, concrete building and the ironclad warehouse adjoining on the side and the rear thereof; the same being located 117.21, 117.21, rear 113.17 on the north side of West street, in block No. 3 in Blankenship addition to the

town of Snyder, subject to certain conditions and warranties contained in the policy, which is as follows: "This entire policy unless otherwise provided by agreement and indorsed hereon, or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in the whole or in part by this policy." That, under the terms of the policy sued on, appellee was authorized to procure other additional insurance on the property in an amount not to exceed $3,500. That the policy was void because appellee had procured additional insurance, covering in whole or in part the property described in the policy in excéss of the amount authorized. And appellant further denied by allegation that the building was a total loss. By supplemental petition appellee alleged that it was untrue that he had taken out additional concurrent insurance upon the concrete building described in his original petition in excess of the amount as provided in the policy, and that in that connection, if appellant contended that the policy sued on covered other of appellee's property than that of the concrete building, appellant's local agent, in writing said policy, had no agreement, authority, or instructions from appellee to so incorporate any building other than the concrete building in the policy, and that he had no knowledge whatever of any other building being included at the time of writing the policy or subsequent thereto; that, prior to writing the policy in question, the local agent of appellant had been writing appellee's policies on the concrete building to keep the policies renewed thereon, which was the only instructions he had given to such agents, and, if the policy included other property than the concrete building, then the act in so including such property was a fraud on appellee's understanding, instructions, and rights. He set out fully the reason for his failure to discover the additional property in the policy, and asked, if it should develop that the ironclad buildings were so included in the policy, then that the policy sued on be reformed and amended so as to cover the concrete building alone, according to the agreement, understanding and instructions given to the local agents of appellant.

By supplemental answer, appellant excepted specially to the supplemental petition of appellee to reform the policy on the ground that said allegations were not in replication of any matter that could be pleaded in his supplemental petition. This exception was overruled by the trial court.

The facts show that appellant issued the policy described in appellee's petition covering the property described therein, and that the building was burned on the 19th of December, 1911. The building was a one-story concrete building of the kind called slush wall building; the walls were some 21 or 22 feet high, and plastered on the inside, and had a double deck about one-third of the

building. It had a plank flooring, and the double deck also had a plank flooring. From the ceiling up to the top it was well built and braced for the purpose of carrying a tar and gravel roof, or a heavy roof; that there were two lines of stringers across, one for the ceiling and one for the roof to lie on, and it sloped back towards the north or the rear. There were two rows of posts through the building to hold up the roof. At the time the fire occurred, it was occupied by a stock of merchandise, consisting of wagons, buggies, etc. All the stock inside was consumed in the fire.

The appellee's testimony is to the effect that he found the walls were decaying rapidly, caused by the fire. That immediately after the fire the walls had begun to slough off, and that they had a number of cracks in them, and that they did not have one before the fire. The east wall had three cracks in it that it did not have before, and that it was out of line a good deal more than it was before the fire. It was shown that this wall, when the building was constructed, was built out of line and a little bit crooked. Each of the walls were 11 inches thick. The south front wall fell to the ground. There were some cracks in the west wall. The north wall was badly cracked. There were no openings in the said wall except some small openings about 10 or 12 inches near the top of the walls. The walls were made out of gravel and concrete. After the fire, the witnesses for appellee state that the texture of those walls, especially inside, was very soft and sloughed off and was rotten. The walls were of solid concrete; were not hollow blocks. The testimony offered by appellee was to the effect that no part of the wall left standing could be utilized in rebuilding or as a basis to rebuild.

The appellant offered one witness, who gave his experience as a contractor and builder and knowledge of such matters, as well as the effect of fire on walls of this character. He testified that he, at the instance of the insurance company, went over the remains of the building and measured the walls and took an inventory of what he considered damaged and would be called a total loss and what might be used to build back again; that he found the front or south wall collapsed and fallen into the street; that the rear wall was in bad shape around where the window openings had been; that in his opinion the north or rear wall ought to come down; that, as to the west wall, the inside plaster was intact on about half of the wall; that the exterior of this wall had the finish coat of cement and was in good shape up to those little diamond-shaped windows in the wall; that in general over that west wall the plaster had not come off. He found that on the inside surface of the west wall the sand and cement had come apart and had disintegrated, some to a slight depth and scaled off on the surface, he should say not

over an inch in depth in any place, and in many places not at all; that up to a height of 12 feet, or up to the bottom of those little diamond-shaped windows, the west wall was true, straight, and clean; that the east wall had a cement coat on the outside, and is as nice and clean a wall as he ever saw; that the cement work is not even cracked and is in good condition; that about the windows it leans out a little, and he would recommend taking it down to the bottom of those little diamond-shaped windows, which were about 12 feet from the ground. He further stated that he noticed on the outside of the wall a perpendicular crack through the outer side of the cement, but this crack did not run through the wall; that there were no cracks through the wall; that on the inside of the wall he noticed three small perpendicular cracks; that these three cracks that he found on the inside of the wall did not appear on the outside; that there is one small crack in the west wall, but it does not go through the wall at all; that he made the measurement of the height of the walls and found them to be 21 or 22 feet from the ground. He further stated that he had examined the walls on the morning that he testified, and that they were just the same then as they were when he was there on the first trip. The witness stated in his opinion that the north and south walls in the building should not be utilized in rebuilding, but that the east and west walls could be used up to a certain height of some 8, 10, or 12 feet. The testimony is conflicting as to whether or not the east and west walls could be used as a basis for rebuilding and in placing the building back in the condition it was before the fire.

[1] The first question presented for our consideration is appellee's motion to strike out the bills of exception filed in this case. By agreement of the parties hereto, the appellee's motion to strike out the bills of exception was submitted to be considered with the main case upon the merits of the appeal. The district court, in which the case was tried, convened September 5th and adjourned September 24, 1913. In the order overruling the motion for new trial, exception was taken to the action of the court, and notice of appeal was given and noted in the order. The following order was also added: "It is further ordered that the parties hereto do have 60 days from and after adjournment of this term of the court within which to prepare and file statements of facts and bills of exception." It is asserted that such order is without authority of law in that there was no good cause shown granting 60 days in which to file bills of exception. The act of the Legislature in question is as follows: "When an appeal is taken from the judgment rendered in any district or county court, the parties to the suit shall be entitled to, and they are hereby granted, 30 days after the day of adjournment of court

in which to prepare or cause to be prepared and to file a statement of facts and bills of exception; and, upon good cause shown, the judge trying the cause may extend the time in which to file the statement of facts and bills of exception." Acts 31st Leg. (1st Ex. Sess.) c. 39, § 7. The bill of exception in this case was not filed within 30 days, but was filed within 60 days. The court had the right to extend the time to file the bill of exceptions upon good cause shown. Having made the order extending the time, we think the presumption is that such cause was shown or the order would not have been granted. Railway Co. v. Cox, 105 Tex. 40, 143 S. W. 606; Id., 104 Tex. 556, 140 S. W. 1078. The motion of appellee is therefore overruled.

[2] Appellant, by his first assignment, complains of the action of the court in overruling its special exception above set out. Under this assignment, it presents the following proposition: "The allegations in plaintiff's supplemental petition, found in paragraph 3 thereof, to the effect, in substance, that, if the policy sued on covered other buildings than plaintiff's concrete building, the inclusion in said policy of the other property was in violation of instructions given to defendant's local agent by the plaintiff, and that the policy therefore should be reformed so that it should cover upon the concrete building alone, were matters which should not have been pleaded in the supplemental petition, because the said allegations stated a new cause of action, and the special exceptions of the defendant thereto that the same should be stricken out, because the matters pleaded were not in replication to any matter pleaded by the defendant, should have been sustained."

Appellee having instituted his suit upon the policy as he claimed it to be, and which in any event covered the concrete building, there was no necessity to allege that it did not in fact cover the iron building in order to plead his cause of action. There was no claim made by him for injury to the iron building by fire, and, until appellant sought to show that it was void by reason of additional insurance having been obtained on the iron building, there was no necessity to allege other facts not material to his recovery. Unless the additional insurance plea was met by some reply showing that it did not or ought not apply, appellee could not have introduced proof to that effect. Until appellant's answer was filed, appellee was not called upon to show that the iron building was not included in the contract insurance. The policy declared on was not void. It could be made so only by proof aliunde. To meet the plea made as a predicate for such proof, we think it was proper for appellee to reply, setting up the facts which would defeat the forfeiture of the contract. And the fact that the supplement set up there was in fact no contract of insurance

covering the iron building, and that, if such policy was made to read so as to cover that building, it was a fraud, did not set up a new and different cause of action, but was an answer which, if true, prevented appellant from defeating appellee's cause of action by setting up a contract of insurance which was never made but, if made, was made to cover other property inserted by the fraudulent acts of its agent. We understand under the rules the plaintiff may allege new facts by supplemental petition in addition to those set out in the original petition in reply to the defendant's answer. Bond v. Hdw. Co., 94 S. W. 144; Townes on Pleading, p. 307; Cotulla v. Baslow, 115 S. W. 294. The first assignment is overruled.

[3] By the second, third, and fourth assignments, the appellant assigns error to the action of the court in giving his charge and submitting questions for the consideration of the jury, and in refusing certain specially requested charges. The court instructed: "You are charged that a building is not considered a total loss by fire so long as its identity as a building is left, and so long as the remnant may be reasonably adapted to use as a basis upon which to restore the building to the condition in which it was before the injury. But it is a total loss unless the remnant after the fire is of that substantial character that, if the same was restored or repaired, it would be considered the old structure and not a new building." The following question was asked the jury: "Was the concrete building owned by plaintiff, covered by the policy of insurance in this case, a total loss by fire of December 19, 1911?" To which the jury answered, "Yes."

The court refused the following requested charge by appellant: "In considering question No. 1 of the court's charge, you are instructed that there can be no total loss so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury. Whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis."

The appellant also requested the court to submit the following question, which was refused: "Would a reasonably prudent owner, uninsured, desiring such a structure as the concrete building was before the fire, in proceeding to restore it to its original condition, utilize any part of either the east or west walls? If so, what portion of either or both, giving dimensions."

The appellant presents as propositions that the charge of the court did not correctly define a total loss; and further "the charge was erroneous in that, before the jury could find that the building was not a total loss, they would have to find: First, that the identity of the structure as a building was left; and, second, that the remnant, if any, might be reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury." Second proposition: "A building is not considered a total'loss by fire as long as the remnant, if any, is such that a reasonably prudent owner, uninsured, desiring such a structure as the building was before the fire, in proceeding to restore it to its original condition, would utilize it as a basis upon which to rebuild." We should add as a part of our findings in this case that the roof and all the woodwork in the building was totally destroyed and only the walls left standing, as heretofore described. The witnesses described the fire as having been very hot and the heat intense. The walls standing are described as disintegrating at least to the depth of about one inch, except in some portions, in which it is claimed, by appellant's testimony, it appears to be intact. There is no evidence as to what it would cost to put the walls left standing in a condition for a basis to place the building in the condition it was before the fire, or the value of the walls standing or the extent of the depreciation in the building injured by the fire. There is no estimate made of the cost of this necessary work to take the walls down to 8, 10, or 12 feet in height and to put cement plaster over the outside. There is no testimony of the cost of the work or the value of the walls shown in the record. Nothing shown except as to their condition.

Appellant relies upon Insurance Co. v. McIntyre, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797, for the proposition that the trial court, in his main charge, did not correctly define "total loss," and erred in refusing to give appellant's requested instruction. It is asserted that whether the remnant of a building is reasonably adapted for use as a basis upon which to restore the building, and whether so adapted, depends upon the question of whether a prudent owner, uninsured, desiring a structure like the one in question was before the injury, would, in proceeding to restore the building to its original condition, utilize such remnant for such basis. The McIntyre Case supports the proposition and lays that down as the proper rule, especially in the kind of case then under consideration. It should be noted, however, that the building in that case had been only partially damaged, and the evidence indicates the greater per cent. of the building was uninjured by the fire and was standing practically intact. The particular question there under consideration was the admissibility of testimony of several expert witnesses that "the cost of repairing and restoring said building to its original usefulness, strength, and utility; that this could be done at a cost of from $1,200 to $1,800, the

value of the material still uninjured in said house, and that the same was worth about $2,500; that the value of the house after the fire was $2,500; that about 90 per cent. of the material still in the house after the fire was uninjured, and that the remnant of said building could be used for reconstructing said building; that only about 20 per cent. of the building had been destroyed; that it could be renewed without tearing down." This evidence was excluded by the trial court in that case. The issue from the opinion of the Supreme Court appears to be whether the value of the building and the remnant or the cost of restoration was admissible on the question of total loss. That court then proceeded to examine the question in the light of adjudicated cases, and concluded by holding the testimony admissible, and announced the rule for determining when a building was a total loss, as above set out. The rule there determined especially applied to the facts of that case, upon the admission of the testimony excluded. In order to ascertain the particular question discussed by the court, and how and when the rule announced is applicable, we believe it can best be determined by taking excerpts from the opinion itself and part of some of the quotations from other decisions discussed therein. The case of Insurance Co. v. Fogarty, 19 Wall. 640, 22 L. Ed. 216, is discussed and quoted. The quotation concludes: "If no piece recovered was of any use, or could be applied to any use connected with the machine of which it was a part, without more expense on it than its original cost, then there was no part of the machinery saved, however much of rusty iron may have been taken from the wreck." The case which is mainly relied upon for the rule is an English case, Irving v. Manning. This case the court discussed at length, and the facts of that case from the opinion of the Supreme Court appear to be that the suit therein was based upon a policy for £3,000, claiming a total loss of the ship insured, valued in the policy at £17,500. During the voyage the vessel was so damaged as to be incompetent to proceed without repairs. The necessary expenditures to have so repaired the vessel would have amounted to £10,500, and the ship would then have been worth only £9,000, which was then, and at the time of the policy, her marketable value. After discussing this case and quoting from it, our Supreme Court said: "This and other English authorities heretofore cited, in this opinion, show that the rule is settled in English practice; that the test by which it must be determined whether there has been a total loss of the ship is whether she has received such extensive damage that it would not be reasonably practical to so repair her. The true inquiry is: 'What a prudent uninsured owner would have done in the state in which the vessel was placed by the peril insured against.' *That question being answered, in most cases at least, by a determination of the* *comparative cost of such repairs with the actual value of the ship after repair.* [Underscoring is ours.] That it appears under the English rule testimony as to costs of repairs is of very material character, and no question could be made as to its admissibility." After reviewing a number of American authorities, the conclusion is reached by the court that the cost of repairs, removing débris, and the like, under both English and American authorities, is admissible as testimony, and, as seen, the costs of repairs is the determining question for the rule whether a reasonably prudent uninsured owner would utilize the remnant. Such fact must be the determining question with any owner who wishes to restore his building. If it will cost as much or more to utilize the remnant as to use the new basis, certainly a prudent owner would not use it. If there is no evidence as to what the cost would be, a jury will not be able, we think, to say what a prudent owner would do in such a case. There being no evidence in this case presenting the issue, the court is not required to charge on it, and should not do so.

In this case each party confines the testimony to the question whether any portion of the east and west walls could be utilized as a basis for reconstructing the building. Appellee showed by several witnesses that in their opinion the walls could not be so used. Appellant, by its testimony, that they could be used. This evidence would not have called upon a reasonably prudent owner to determine whether the remnant of the building could be utilized, but he would have to determine only which opinion was the correct one, as to the use of the remnant. That was all the jury, under the evidence, was required to do, and that was the issue submitted to them by the court. The definition given by the trial court went as far as the facts authorized him to go, and it appears to us was correct, as applicable to the facts before the jury. The court told the jury if the identity of the building was left it was not a total loss. Appellant doubtless will assent to that proposition. "And so long as the remnant may be reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury," it was not a total loss. Appellant's testimony is that the remnant was in that condition, and, if the jury had accepted its testimony, they would have found there was not a total loss. The court, after telling the jury what would "not be a total loss," defined what "would be a total loss." This latter part of the definition does not appear to have been criticised. The only error urged is that the jury were not told that, if a prudent owner would have utilized the remnant as a basis, then it would not be a total loss. We do not think, under the facts of this case, such a charge was required or applicable. From aught that appears in the testimony, the costs of preparing these walls

as a basis for a reconstruction may be more than erecting a new wall, or than what they originally cost, or their value at the time of the fire. If that is true, as said in the case of Insurance Co. v. Fogarty, 19 Wall. 640, 22 L. Ed. 216, supra, then there is no part of the walls saved. A prudent owner takes out an insurance policy for indemnity against loss, and, if the cost in repairing the remnant equals or exceeds the value of the wall, then there is no part of it saved. It therefore becomes necessary to show something of its value, the cost of repairing, etc., in order to determine what a reasonably prudent owner would do. In this case appellee made a prima facie case by showing that the standing walls could not be utilized for reconstructing the building, and that there was a total loss. Appellant sought to rebut the prima facie case showing certain portions could be used, but failed to show, if used, that the loss which it had insured against would not be sustained by using the walls. The naked question was therefore presented by the evidence, for the consideration of the jury, whether the walls could be utilized.

The case of Northwest Mutual Ins. Co. v. Rochester German Ins. Co., 85 Minn. 48, 88 N. W. 265, 56 L. R. A. 108, cited by appellant, cites and comments upon the McIntyre Case, approving it. In that case the proof showed the value of the walls remaining. It will be observed also that the charge of the trial court was subject to criticism in other parts than that urged in this case. That court, in the course of the opinion, said: "If, then, as a reasonably prudent business proposition, the remaining portion of the building could be utilized, in place, for the purpose of construction or repairing, the insurer must be permitted to exercise its option to either reconstruct or pay the reasonable cost thereof, as found by the board of arbitrators." The value enters into the consideration as a business proposition, and, unless the testimony shows its value, it is not a business proposition. The fact that the wall could be used as a basis does not show that it would be a "prudent business proposition," either on the part of the insured or the insurer. It might be the height of folly to so use it from the standpoint of business, and may cost more than its value to so utilize it.

The facts of this case are nearer like the facts in the case of Insurance Co. v. Garlington, 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613, in which Judge Stayton, for the Supreme Court, declared that the rule announced in the case of Williams v. Insurance Co., 54 Cal. 450, 35 Am. Rep. 77, is the "true rule," and quotes the rule, which is as follows: "A total loss does not mean an absolute extinction. The question is not whether all the parts and materials composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Al-

though you may find the fact that after the fire a large portion of the four walls were left standing, and some of the iron work still attached thereto, still, if you find that the fact is that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed, within the meaning of the policy."

In the case of Murphy v. Insurance Co., 25 Tex. Civ. App. 241, 54 S. W. 407, Judge Raney laid down the rule, the language of which is substantially that given by the trial court in this case in the charge to the jury, who evidently followed the rule announced in that case. The facts in that case are in many of their features similar to this, and we believe the charge of the court in this case sufficiently accurate, so that a jury of ordinary understanding would be able to determine whether the building was a total loss. Insurance Co. v. Meyer, 9 Tex. Civ. App. 7, 29 S. W. 93; 19 Cyc. 833.

We believe, under the facts of this case, the instruction given by the trial court did not prejudice the rights of appellant and was as favorable to it as the facts would permit. We do not believe the charge given or refused on this point should reverse the case, and therefore the second, third, and fourth assignments are overruled.

[4] The fifth assignment of error is as follows: "The court erred in rendering judgment, with interest from the date of the fire, because, under the terms of the policies sued on, any money that defendant was liable for was not payable until 60 days after the receipt of proof of loss by defendant. The undisputed evidence shows that a proof of loss was delivered to defendant by plaintiff on February 6, 1912, and plaintiff could only be entitled to interest from April 7, 1912. The judgment should therefore be for $4,890.75, with interest thereon from the date of the judgment." It is contended that the judgment is excessive to the amount of $81 interest, and that, under the terms of the contract sued on, plaintiff was required to furnish a proof of loss. The policy provided that any sum for which the company might be liable to the plaintiff would not be due and payable until 60 days after the receipt of the proof of loss, and the proof of loss was filed with the company February 6, 1912. Sixty days thereafter would have fallen on April 6, 1912. The fire occurred in this case on the 19th day of December, 1911. The court rendered judgment for interest from that date.

It appears to be the holding of the Courts of Civil Appeals that, where a building is destroyed, the amount is due when the loss occurred, and it will bear interest from that date. We shall not discuss any doubt that may be suggested by the interpretation of the policy, but shall regard the rule as settled by the courts until the Supreme Court shall hold otherwise, if the holding of the Courts

of Civil Appeals is not correct. Insurance Co. v. Chase, 33 S. W. 602; Insurance Co. v. Leverton, 33 S. W. 579; Insurance Co. v. Ruddell, 37 Tex. Civ. App. 30, 82 S. W. 826; Insurance Co. v. Ice Co., 64 Tex. 578; Insurance Co. v. Morrison, 162 S. W. 411. The fifth assignment is therefore overruled.

We believe the case should be affirmed; and it is accordingly so ordered.