Common Pleas Court of Hamilton County.

SOLOMON ROSENBAUM V. HAMILTON COUNTY MUTUAL FIRE INSURANCE CO.

Decided June, 1928.

*Irwin S. Rosenbaum* and *W. Donald Hall,* for plaintiff.
*George H. Kattenhorn,* for defendant.

DARBY, J.

The facts are, that after the issuance of the policy of fire insurance in this case, a fire occurred, and according to the practice of the insurer, investigators examined the property and bids for the repair were submitted by three persons. After negotiation between the insurer and insured, an agreement of settlement was made between them, and the sum of $475 was paid the insured, on the assumption that the building could be repaired, and that the repairs would cost approximately the amount stated. The insured likewise caused the property to be examined by his own builder, and undertook the repairs, rather than to have the insurer make them. The fire occurred about December 16, 1925, the settlement referred to was on December 22, 1925, and the check was cashed on December 26, immediately thereafter. Upon the 29th of December an examination of the building was made by the city

authorities, and acting under the powers vested in them, they issued an order of condemnation of the building, and refused a permit to rebuild the damaged house. Within a reasonable time the plaintiff sought to return the amount he had received from the insurer, which was refused.

This action is brought to recover the difference between the amount paid by the insurer and the face of the policy, amounting to $525, upon the theory that the loss was a total loss, and therefore plaintiff is entitled to recover such difference.

It seems thoroughly well settled upon general principles, that where a building is insured against fire, and is dameged by fire to an extend that it cannot, under local law or municipal regulation, be restored or repaired, and the building is condemned, that the loss is a total loss, and the insured is entitled to recover the full amount of the policy.

In *Brady* v. *Northwestern Insurance Co.,* 11 Mich., 425, it is said:

"A policy of insurance against fire covers all loss which necessarily follows from the occurrence of a fire, whenever the injury arises directly or immediately from the peril, or necessarily from incidental and surrounding circumstances, the operation and influence of which could not be avoided.

"A wooden building situated within the fire limits of Detroit was injured by fire, and by the ordinances of that city could not be repaired without the consent of the common council. This consent was refused. The building was insured for $2,000, and the policy contained a clause that in case of loss or damage to the property, it should be optional with the company to rebuild or repair the building within a reasonable time. The cost of repairing the building would be much less than the amount of the insurance, but without leave to repair, the building, which before the fire was worth $4,000, would now be worth less than a hundred. *Held,* that the insured was entitled to recover the whole insurance, and was not limited to such amount as would cover the cost of repair."

On p. 466 the court say:

"* * * To hold that for an injury to the property, which results, without the fault of the insured, in a total loss to him as far as value and use are concerned the in-

sured can only receive compensation to the extent of the appraised damage to the materials of which the building is constructed and which were destroyed, would establish a narrow, illiberal and illogical rule. The value of the building consisted in its adaptation and use as well as in the materials of which it was constructed; and if it could not be restored to use after the fire, the loss was total, less the value of the materials rescued. In the very pertinent language of the plaintiff's counsel, 'The contract was not simply an agreement to pay for so much material as might be damaged by fire—to pay such amount as the material might actually be worth. Fixed by the conditions of the policy as the most hazardous of all structures, and with a premium adjusted accordingly, the insurer took the risk upon a 'three-story wood warehouse' actually in use as such. The risk was not taken upon a mere collection of beams, boards and other materials thrown together without purpose or special adaptation; it was upon a building for trade, situated within a particular locality, within the jurisdiction of municipal authorities vested with legislative powers for special purposes, and subject to the exercise of those powers;' and the parties must be regarded as contracting with a full knowledge of the facts and the law, and the risk to which the property was thereby subject."

In *Larkin* v. *Glens Falls Ins. Co.*, 80 Minn., 527, it is held:

"In an action upon an insurance policy covering a building located within the fire limits of the city, and of a class the repair of which is under certain conditions prohibited by the city ordinances, recovery may be had as for a total loss when the repair of the building insured and damaged is prevented under and by reason of such ordinance; the value of what remains of the building after the fire, over and above the cost of removing it from the premises, being deducted therefrom."

In *Monteleone* v. *Ins. Co.*, 47 La. An., 1563, it is held:

"The condemnation and prohibition of any attempt to repair a building made unsafe by injuries from fire is within the police power of the city. (State Charter 1882, Act. 20, Sec. 7 and 8.)

"When the building insured is so injured by fire as to be made insecure and a menace to life, is condemned by the proper authorities, and attempt to repair it is prohibited by them, the insured may claim a total loss, although the

building when insured was not sound. Wood on Insurance, Sec. 445-6; May on Insurance, Sec. 433; 127 Mass., 309; 19 Wallace, 640; 11 Mich., 446; 54 Cal., 450; 18 S. W. R., 337; Am. Dig., for 1893, 2171, No. 316.

"In such case the indemnity of the insured is not useless repairs, but the value of the building."

See also the following cases, in which is involved the so-called valued policy law: *New Orleans Real Estate M. & S. Co.* v. *Teutonia Ins. Co.*, 54 So. R., 466; *Ins. Co.* v. *Nunn*, 99 Miss., 493; *Dinneen* v. *American Ins. Co.*, 98 Neb., 97.

By virtue of the authorities referred to, the court is of the opinion that the loss in this case was a total loss.

The defendant claims that there was an accord and satisfaction, which is binding upon the plaintiff; the plaintiff replies that the alleged accord and satisfaction was made between the parties under a mutual mistake that the property could be repaired.

There is no question from the evidence, that both parties thought at· the time that the building could be repaired; their negotiations were foolish otherwise. The only subject of discussion between them was as to the proper amount for the making of the repairs. It was apparently not in the mind of either party at the time, that a permit would be denied upon application.

Ordinarily the rule is that where there is a mutual mistake between the parties in the making of a contract of any kind, no contract is created, and the parties are not bound by it.

In 6 R. C. L., p. 621, the rule is summarized as follows:

"If an agreement is induced by a mistake common to both parties, without which mistake the agreement would not have been made, and the mistake was in respect of the subject matter of the contract, the agreement is inoperative and void. Such was the civil law. This rule, which has been adopted as part of the common law, is based upon the idea that in such cases no contract has been consummated, that the minds of the parties have never met in respect of the real subject matter of the contract. It is not a mere failure of consideration, for that implies the existence of a contract, while a mutual mistake prevents the existence of a contract. Within this rule is a mutual mistake as to the identity of the parties or of the subject mat-

ter. Likewise, where parties assume to contract and there is a mistake as to the existence of the subject matter there is no contract, because of the want of the mutual assent necessary to create one. Examples of such mistakes are the sale of a horse which happens to be dead, or of a house consumed by fire before the contract is concluded. Similarly, if an attempted contract assumes the existence of, and is based upon the existence of an essential fact which does not exist, there is no meeting of the minds of the parties in reality, and no contract can be enforced by either. It has also been said that if, by mutual mistake, a contract is founded upon a condition impossible of performance because of the assumption of the existence of a fact which cannot exist, and its adoption by both parties as the sole standard by which to test the performance of the condition, the contract cannot be enforced, and it is immaterial who furnished the information upon which the condition is predicated, or that the person pleading the mistake had the means of discovering it, or by care and diligence might have avoided it. In cases in which both parties are mistaken as to the subject matter, the courts almost unanimously now hold that although the mistake of facts is caused by the negligence of one party, that party is not precluded thereby from availing himself of the mistake if the other party can be relieved of any prejudice caused thereby."

In 1 C. J., p. 570, Sec. 105 it is held:

"3. Mistake. An accord and satisfaction entered into and executed through mutual mistake of fact is not binding and may be rescinded. The general rule that a contract made under an assumed state of facts, as to which there was a mutual mistake, may be rescinded applies to every form of contract including accord and satisfaction."

Having reached the conclusion that the loss in this particular case was a total loss, the insured is entitled to recover the face of the policy—that is conceded by the defendant. The accord and satisfaction being based upon a clear mistake of facts, is inoperative and does not serve to relieve the company from its full liability under this contract.

Judgment may be entered for the plaintiff for $525 and interest.