## MARY L. MURPHY v. AMERICAN CENTRAL INSURANCE COMPANY.

### Decided October 21, 1899.

**1.—Fire Insurance—Total Loss of Building.**

Under the article of the statute making fire insurance companies liable for the full amount of the policy in a case of total loss of property other than personal, a building is to be regarded as a total loss where the remnant left is inconsiderable, compared with the part entirely destroyed, and is not such as to constitute a sufficient basis upon which to restore the structure. Rev. Stats., art. 3089.

**2.—Same—Use of Wall in Rebuilding.**

The fact that part of one wall of a brick building destroyed by fire was used in constructing another building on the site of the destroyed one, the wall so used being a division wall and such use of it being over the protest of the constructors, does not prevent the loss of the building from being a total one within the meaning of the statute. Insurance Company v. Garlington, 66 Texas, 103, followed, and Insurance Company v. McIntyre, 90 Texas, 170, distinguished.

**3.—Same—Foundation of Building Not Considered.**

In determining whether there has been a total loss of a building by fire, the foundations are not to be considered, as the contract of insurance is made with reference to the part of the structure above ground.

Appeal from Grayson. Tried below before Hon. Don A. Bliss.

*Mosely & Smith,* for appellant.

*Kearby, Muse & Oeland,* for appellee.

RAINEY, ASSOCIATE JUSTICE.—Appellant sued to recover on an insurance policy which covered a building belonging to appellant that had been destroyed by fire. A total loss was alleged by plaintiff. This was denied by defendant company, which contended that the injury to the building was only partial; that an appraisement of the loss was had under the terms of the policy, and the damages awarded was $1298.21. On a trial before a jury a verdict and judgment were rendered for defendant company for the amount of the award, from which this appeal is prosecuted.

On the issue of a total loss the court charged the jury as follows: "You are instructed that under the law of this State there can be no total loss of a building so long as a remnant of the structure standing

Vol. 25 Civil—16.

is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; and whether such remnant remaining standing is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the building was before the fire, would in proceeding to restore the building to its original condition, utilize such remnant as such basis.

"Therefore, unless you believe from the evidence that, after the fire which burned the building belonging to the plaintiff, upon which the policy of insurance sued upon in this case was issued, no remnant of said building was left standing that was reasonably adapted for use as a basis upon which to restore said building to the condition in which it was before the fire, such as a reasonably prudent owner, uninsured, desiring such a building as the building was before the fire, would, in proceeding to restore the building to the same condition that it was in before the fire, utilize said remnant as such basis, you will find for the plaintiff the amount of the award, with interest as hereinafter stated.

"But if you believe from the evidence that after the said fire there was no remnant of the said building left standing that a reasonably prudent owner, uninsured, desiring such a building as said building was before the fire, would have utilized as a basis upon which to restore said building to the condition in which it was before the fire, you will find for the plaintiff the full amount of the policy herein sued on, to wit, the sum of $2000, with interest thereon at the rate of 6 per cent per annum from the 14th day of May, 1898, to the present date.

"So, of course, if you believe from the evidence that, after said fire, there was left standing a part of one of the walls of said building and the foundation of said building, or a part of said foundation was left standing in such a condition that a reasonable prudent owner, uninsured, would have used such part of said wall or such foundation or such part of said foundation as a basis upon which to restore said building to the condition in which it was before the fire, you will find for the plaintiff the amount of said award, to wit, $1298.21, with interest as before stated."

Appellant requested the following special charges, which were refused, to wit: "In arriving at the determination as to whether or not plaintiff suffered a total loss of the building insured, as contemplated by our statute, you are charged that you are not to take into consideration portions of material lying around and out of place in the building, although you may believe that such material was not destroyed. The true test is, was any substantial portion of the building left standing above the surface of the ground in such condition and extent as to be reasonably suitable as a basis upon which to reconstruct said building in like condition as it was before the fire as to strength, security and utility?"

."The Legislature of this State has provided that when an insurance policy is granted on a building on land, and the building is totally destroyed by fire, the policy shall be held as a fixed demand for the full

amount thereof. So, in this case, if you should believe from the evidence that plaintiff's building was totally destroyed by the fire, you will find in her favor against defendant for the sum of $2000, with interest thereon at the rate of 6 per cent per annum from the 10th day of May, 1898, to the present time. Now, in determining whether or not plaintiff has sustained a total loss, as used in and intended by our statutes, you are charged that the words 'total loss,' as used by the statute, does not mean the utter destruction of the materials that entered into the construction of the house, but that, by reason of the fire, the building has lost its specific character and identity as a house, and that there was no substantial or considerable portion of the building left standing in such a condition that by using the same in the reconstruction of a building, that is, by building thereon a house similar to the one burned, the insured would secure a building substantially as good and suitable as the one burned." Which action of the court is assigned as error.

Appellant complains of the third, fourth, and fifth paragraphs of the court's charge, "because the true test of the total loss of a building, as applied to the facts in this case, is not therein stated, and because the use of the word 'basis,' as used in the charge, was calculated to mislead the jury."

The evidence adduced on the trial is substantially that the building burned was a one-story brick and stone store building, 80 feet in length, 25 feet wide, and ceiling about 14 feet in the clear. East and north wall brick, and north 20 feet of west wall brick, balance of west wall all rock. Front, brick pillars and glass, as is usual in business houses. The east and west walls were division walls in which appellant owned a half interest. After the fire a two-story brick building was erected on the site of the old building. Leonard, an architect, and who constructed the new building, stated that none of the walls and foundations on the north, east, and south were used in the construction of the new building, nor was any left standing fit for use. A part of the west wall was standing after the fire. A part of this wall was torn down in rebuilding, and a part used. The part used was about from 15 to 25 feet long at the base, and in some places it was 2 feet high and ran up to a point and beveled off. He did not think it reached 12 feet in height. The foundation and wall that were used were unfit for use. He condemned the whole of the west wall, and the portion that was used, was used over his protest. The portion used was so used by reason of the men who owned half of the west wall insisting on using it. After the building was reconstructed, the west wall was about three inches from a true line; this was caused by the use of the old wall. The foundation under the east wall was taken up entirely. It was not fit for use. The north side was quite as bad, in his opinion. The foundation on the south side was not quite as bad, but not as bad as the two longitudinal walls. The back foundation was not used; it was not fit for use. The back wall of the new building was put in a different place. There were no joists left that could be used in the reconstruction of the new

building, nor any flooring. There were some rocks left that were fit
for use. There were a few sills on the south foundation, but they were
not fit for use; none fit for use were left in place on the rear wall.
Two window sills fell from their places; one was cracked and one very
much injured, apparently. These were not used in rebuilding.

Zoratto, who acted as umpire in the appraisement, testified that the
only foundation used was the foundation of the middle wall between
the east and west wall, which was a good foundation. The piece of wall
left standing was not in first-class condition.

Dawson testified that he worked as a carpenter in the construction
of the new building. That all the walls were new, except on the west
side there was a little piece of the old wall used. It was probably 10
or 12 feet high in the center and tapered down until it was probably
15 or 20 feet long at the base, and in shape of an inverted "V."

McGowen testified that, "in the construction of the new building upon
the site of the old one that was destroyed by fire, there was nothing left of
the east wall or foundation upon which to build, and no portion of the
north wall or foundation, and no portion of the south wall or founda-
tion. There was a very little piece of the west wall and a part of the
foundation left and used. It was a small piece of wall, just a few feet
high. The wall that was used was not straight; was not on a true line
north and south."

O'Reilly, witness for defendant testified as follows: "I came to
Denison from Dallas at the request of the adjuster for the insurance
company. This is my first appraisement for this insurance company,
but have been called upon to appraise for others occasionally. I was
selected by the underwriters to make a survey of the property in the city
of Dallas. They selected me from the architects and builders of Dallas
to discharge duties of that kind. I have served companies occasionally
that way, more or less, since then. I came to Denison to serve as an
appraiser for the insurance company in making the award. We figured
in as sound material the west wall of the building, extending from the
front to the rear, 60 feet long and 22 feet high and some inches. We
concluded that the wall was good. We figured on using the founda-
tion of the back wall and the foundation of the east wall and founda-
tion and sills and bases of the columns, together with a couple of the
columns on the front wall. Also we figured on using 57 of the joists
on which the flooring was laid. Also some window sills, and from 60
to 75 per cent of the flooring. This is what we figured as sound.
Plaintiff was not allowed anything in our estimate for damage or loss
to them. The debris had not been cleared away when we did our figur-
ing. We did not figure the east wall, because it was not there, nor the
north wall, because it was not there; only such portions of the south
wall that was there, that is, bases or flints; none of the south wall was
there except that. The south wall was down; the north wall was down;
the east wall was down. We examined the foundation as far as it was
exposed to the eye. We could examine from 10 to 14 inches of the

foundation, as well as I can recollect. We determined that the foundation was all right, except that it was damaged to the extent of $5 to the north end. We examined the wall on the west side and found no crack. We found the wall plumb on a tangent. We concluded that the foundation was good on all sides except the rear, and that could be repaired for $5. We found that the west wall was good 60 feet long and 22 feet high. The total length of the west wall was 80 feet, but only the first 60 feet was rock, the back 20 feet was of brick. This back 20 feet was damaged, but the rock portion, 22 feet high and 60 feet long, we concluded to be good. The foundation of the west wall was not damaged. We examined it from observation, and it did not show any indication of damage by fire. This was a short time after the fire."

Under the foregoing facts the question arises, did the court present to the jury the proper test to govern them in determining whether or not there was a total destruction of the building as contemplated by article 3089, Revised Statutes, which provides: "A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy; provided, that the provision of this article shall not apply to personal property."

In the case of Insurance Company v. Garlington, 66 Texas, 103, the question at issue was whether or not there was a total loss of the building by fire. The trial court in that case found that "the east wall of it (the building) was entirely destroyed. The roof was destroyed. Almost one-half of the interior of it (extending from the foot of the east wall to the top of the west wall) was destroyed. The front of it was partly lying on the street and partly hanging, liable to fall at any time. Thus it had lost its specific character as a building, and was unfit for use as a hotel or for other purposes, and was a total loss." No mention is made of the destruction or injury to the other two walls; from which the natural inference is that they were left standing and uninjured. Justice Stayton, in passing upon that state of facts, said that they justified the conclusion reached by the trial court that *it was a total loss,* and that "it was the building insured—a specific thing, and not merely the material of which it was constructed." He also adopted as correct the rule announced in the case of Williams v. Insurance Company, 54 California, 540, as follows: "A total loss does not mean an absolute extinction. The question is not whether all the parts and materials composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Although you may find the fact that, after the fire, a large portion of the four walls were left standing, and some of the iron work still attached thereto, still, if you find that the fact is that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed within the meaning of the policy."

If this is the correct rule in determining a "total loss" of a building, then, under the facts of this case, the test applied by the trial court in its charge in this case was error, and the special charges asked by appellant's counsel should have been given.

The learned trial judge followed the test announced by Justice Denman in the case of Insurance Company v. McIntyre, 90 Texas, 170, evidently deeming that the rule in that case applied to this. The facts of that case and the one under consideration are so entirely different as to the extent of loss that the rule stated in the former case, "that there can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury," in our opinion is not applicable here. In that case the facts clearly show that the building was only partially injured, and the part left standing and uninjured greatly exceeded in value the part injured, and the building could have been repaired at much less cost than to have rebuilt. The condition of the building after the fire was such as to fully warrant the conclusion reached in that case by the able justice. No such condition exists in this case. Only a small portion of the burnt building was used in the construction of the new building, and this was used by the direction of one of the owners of that partition wall, over the protest of the constructors who considered it unfit for use. The remnant of the burnt building was in our opinion, under the evidence, inconsiderable, compared with the part entirely destroyed, and did not constitute a sufficient basis upon which to restore the burnt building. The building constructed on the site of the burnt building was practically a new building in its entirety, and can not be considered the old building repaired or restored, but it is essentially a new structure. In our opinion, for a remnant of a burnt building to be "reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury," it must be a substantial portion of the building remaining standing fit for use, and such as that its identity as a building has not been totally destroyed; or, in other words, the remnant must be of that substantial character as that when restored or repaired it will be considered the old structure and not considered a new one. It is difficult for the court to so define what constitutes a total loss of a building by fire in which the distinguishing line between a total and partial loss can be determined in all cases, but the distinction must rest upon the particular facts of each case. As before stated, the facts in this case in our opinion show a total loss of the building under consideration, and warranted an imperative instruction to that effect.

We are of the opinion that the court erred in instructing that the jury might consider the injury to the foundation in reaching a conclusion as to a total loss. We think the weight of authority to be that, in making the contract for insurance, it was contemplated that the foundation would not be destroyed; but that the contract was entered

into with reference to that portion of the structure above ground. O'Keefe v. Insurance Co. (Mo.), 41 S. W. Rep., 922, and authorities cited.

We deem it unnecessary to discuss the question raised as to the rulings of the court on the appraisement, as such become immaterial under our view of the case as heretofore expressed.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

[NOTE.—After the remand of this cause, and upon another trial had below, the jury were instructed to find for plaintiff the full amount of the policy, upon the ground that the loss was a total one. The judgment was for plaintiff accordingly, and, upon a second appeal, was affirmed by the Court of Civil Appeals (61 Southwestern Reporter, 956), and writ of error was denied by the Supreme Court.]