## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

PHOENIX INSURANCE COMPANY V. SHULMAN COMPANY, INC.

June 12, 1919.

Absent, Burks, J.

1. FIRE INSURANCE—*Insurable Interest—Lessee's Interest in Improvements.*—A lessee of premises made extensive improvements and obtained insurance upon them. Conceding that if the premises were not totally destroyed, there was an obligation upon the landlord to restore, such obligation would only go to the extent of restoration of the premises to the condition they were in when the lease was executed, before the improvements were made by the assured; therefore, the assured had an insurable interest in the improvements. If, on the other hand, the premises were totally destroyed by fire without fault of the lessor, there was no obligation on the landlord to restore the premises, and hence the lssee had an insurable interest in the improvements.

2. FIRE INSURANCE—*Improvements—Total Destruction.*—A lessee of premises made extensive improvements upon them and secured insurance upon such improvements. There was not a total physical destruction of the material in such improvements at the time of the fire. But as the result of the fire, none of such material could be used to restore the improvements to that class and condition in which they were immediately proceding the fire. This amounted to a total loss to the assured of the whole value of the interest which it insured. It was a situation in which what would have been but a partial loss to the owner of the building, since he would have owned the material left undestroyed by the fire, was a total loss to the tenant, since the latter did not own the material, so that the sale or any use of it might minimize the damages, and since the material was so injured that it could not be used in the reconstruction of the class of improvements which the tenant needed in his business.

   *Held:* That the tenant's loss as a result of the fire was a total loss, and the use of the term "total destruction" in the contract of insurance did not render it inoperative to indemnify the assured against such loss.

3. INSURANCE—*Construction—Strict Construction Against Insurer.*—
An insurance contract, like any other contract, must be con-
strued in accordance with its terms. Its plain meaning must
be given effect. Courts cannot make contracts for parties. But
all of the provisions of the contract will be construed together
and seemingly conflicting provisions will be harmonized, when
that can be reasonably done so as to effectuate the intention
of the parties as expressed in the contract. And especially is
this true as to insurance contracts, which, under well-settled
rules, in case of doubt as to their meaning, are construed
strictly against the insurer and liberally in favor of the as-
sured.

4. APPEAL AND ERROR—*Requested Instructions—Invited Error.*—
Where in an action upon an insurance policy the trial court
gave an instruction which was asked for by the insurance
company, and given as asked, which instruction presented to
the jury a rule of law, the insurance company having asked
for such instruction, and the case having been tried upon the
rule of law thus laid down, and the evidence for the assured
having fully measured up to such rule, the insurance company
is bound by such rule of law.

5. FIRE INSURANCE—*Instructions—Landlord and Tenant—Insurable
Interest.*—In an action by a tenant against an insurance com-
pany the trial court gave the following instruction: "The
court instructs the jury that the plaintiff in this suit had an
insurable interest in the property insured under the policy in
this suit, regardless of the terms of the lease in evidence."

*Held:* That this instruction could only have been prejudicial to
the insurance company if the assured had no insurable inter-
est under the terms of the lease, and as the assured did have
an insurable interest under the terms of the lease, the assign-
ment of error to the instruction could not be maintained.

6. FIRE INSURANCE—*Evidence—Cash Value of Assured's Interest.*—
By the terms of an insurance policy the interest of the assured
was the original cost of improvements at a certain date, less
a monthly decrease named and deductions for depreciation, as
provided in the printed conditions of the policy. The printed
conditions provided that the insurance company should not be
liable beyond the actual cash value of the property at the time
of the loss.

*Held:* That the testimony tending to show what was the cash
value of the interest of the assured in the improvements at the
time of the fire was relevant and admissible.

Error to a judgment of the Law and Chancery Court of city of Norfolk. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is a suit instituted by Shulman Company, Inc., in the court below against the Phoenix Insurance Company to recover the sum of $7,500.00 alleged amount of loss suffered by the assured by reason of the alleged destruction by fire of a certain property interest covered by a certain policy of insurance whereby the insurance company insured the interest of the assured in such property against "total destruction" by fire.

The policy of insurance is described in the record as a "valued policy." It is in the usual standard form of fire insurance policies, except that it is peculiar in the following named respects: Next after the standard provisions in the policy as to insurance "against all direct loss or damage by fire except as hereinafter provided, to an amount not exceeding seventy-five hundred ($7,500) dollars" (the amount being the amount inserted in this particular policy) "to the following described property while located and contained as described herein and not elsewhere, to-wit:

"As per form attached—There is attached what is commonly known as a 'rider,' containing the following special provisions pertaining to this particular contract of insurance, namely:

"$7,500.00—On the interest of the insured in the permanent improvements made to building by them, including store front, hard-wood floors in store, and windows, messanine floor and appurtenances and decorations in store, located Nos. 202-204 Granby street, also on wall or showcases and signs thereon, in hotel lobby, all of the above being in the 'Monticello hotel' building, situate on the northeast corner of Granby street and City Hall avenue, in Norfolk, Virginia.

"It is understood that this policy does not cover window backs or store furniture and fixtures specifically insured.

"It is the intention that this insurance is to indemnify the insured against fire loss to the property above described *only in case of total destruction by fire,* and in no event shall this company's liability *exceed the interest of the insured in the above-described property,* which, for the purpose of determining in event of fire occurring during the life of this policy *causing total destruction thereof,* shall be computed, i. e.:

*"The original cost as of January* 1, 1915, to be subject to one-one hundred-and-twentieth (1/120th) decrease monthly from said date to date of fire, if any, the amount of insured's interest remaining at time of fire to *also be subject to deduction for depreciation as provided for in the printed conditions of this policy,* and in no event to exceed this company's proportionate amount of the total insurance thereon at time of fire.

"This insurance is also effected subject to the conditions of the electric light and power permit and lightning clause, and permit for keeping of two gallons of gasoline, which are hereby made a part of this policy.

"Attached to and made a part of policy No. 6859—Phoenix Insurance Company of Hartford, Connecticut.

"Thompson, Etheredge & Co., Agents."

(Italics supplied.)

The printed conditions of the policy providing for deductions for depreciation are as follows:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event ex-

ceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

The policy covered the period of one year from December 1, 1917, at noon, to December 1, 1918, at noon, and was issued on the first-named date. It covered the interest of the assured in the permanent improvements mentioned in said "rider" made to the hereinafter-mentioned leased premises at the expense of the assured.

The record shows that such improvements were made in the early part of the year 1915. They were made to the floor and front of two certain store-rooms thrown into one room on the first floor of the building known as the Monticello hotel in Norfolk. They were made in pursuance of the provisions of a lease of the whole of such store-room by its owner (hereinafter referred to as landlord); to the assured for a term of ten years, commencing January 1, 1915. The lease was dated August 31, 1914, and acknowledged for recordation the latter part of September, 1914. The record shows that at the time this lease was executed, the whole store-room, including floor and front, was being rented out by the landlord and was then occupied by a tenant and was in as good condition as the landlord would contract to put it, except to the extent of making an outlay of $750.00 towards the improvements of the floor, which the landlord agreed in said lease to make for that purpose; and it was expressly provided in such lease that the residue of the expense of putting a new floor in such store and the total expense of certain alterations and changes in the store front, which, together, constituted the improvements which were the subject of the insurance aforesaid, should be all borne and paid for by the assured. It was further provided in such lease that the work of installing said improvements should be commenced by January 1, 1915; be completed as soon thereafter as practicable; and when completed were to become the property of the landlord.

The lease also contained the following provision: "* * * in case the said premises are, without default on the part of the lessee, injured by fire or otherwise, but not to such an extent as to make them or any part thereof untenantable, then the said lessor is to repair the same at its own expense and there is to be no abatement of the rent; if, however, the injury so occurring to such premises is so great as to render same or any part thereof untenantable, then there will be a reasonable deduction from the rent for such time as may elapse before the said lessor shall restore said premises to tenantable condition, which shall be done within a reasonable time, or otherwise the lease shall be, at the option of the lessee, terminated; but if the said premises be totally destroyed, without default on the part of the lessee, as aforesaid, by fire or otherwise, then the said lease shall *ipso facto* terminate upon the occurring of such destruction."

The said lease was exhibited to the agent of the insurance company at the time the contract was entered into, and the insurance company was then fully advised and understood what property and what interest therein it was insuring.

The fire in question occurred January 1, 1918.

The original cost of said improvements borne and paid by the assured was the sum of $12,024.*17*. Deducting from such amount the monthly decrease thereof provided for in said "rider" left the sum of $8,416.92 as the value of the interest of the assured still existing in the said cost of said improvements at the time of the fire, January 1, 1918, or an amount in excess of the $7,500.00 amount of insurance aforesaid.

Considering the evidence under the statutory rule applicable, we find the record shows the following facts: The result of the fire was to render the premises untenantable, and the effect of the fire upon said improvements was, not to physically totally destroy the material used therein, but

to damage the same to the extent of rendering it unfit to be used in restoring such improvements to their condition just previous to the fire; that is to say, none of such material could, with reasonable prudence, be used to restore the improvements so as to make the same class of floor and store front as existed just before the fire; but a great part of such material could have been used to restore the floor and store front as an inferior-class job, such as was the floor and store fronts of the premises as they stood at the time of the execution of the lease aforesaid, and before the first-class floor and store front were installed at the desire and at the expense of the assured, as aforesaid, less normal wear and tear during the time they had been used prior to the fire.

There was a trial by jury and a verdict for the assured for $7,500.00 and interest thereon which the trial court declined to set aside, and it entered judgment accordingly. And the defendant insurance company brings error.

*Williams & Tunstall*, for the plaintiff in error.

*Hicks, Morris, Garnett & Tunstall*, and *Tazewell Taylor*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The questions raised by the assignments of error will be passed upon in their order as stated below.

[1]   1. Did the assured have an insurable interest at the time of the fire in the improvements which were the subject of the insurance contract in suit?

This question must be answered in the affirmative.

It is claimed by the insurance company that under the provisions of the lease set forth in the above statement of

facts, the assured had no insurable interest in the improvements aforesaid, for the reason that in case of partial destruction of the premises by fire (which the insurance company insists is the case before us) the landlord, as provided in the lease, was obligated to restore the premises, so that the assured had only to insist upon its contract rights against the landlord, and it would have suffered no loss by the fire in question. We may conclude that as between the landlord and the assured, the destruction of the leased premises by fire was only partial, and yet the correctness of said position would depend upon the determination as to what condition the landlord was obligated by the lease to restore the premises in such case. As appears from the statement of facts above, the premises were rendered untenantable by the fire. The contract admits of some question whether in such case there is any absolute obligation on the landlord to repair. But if it be conceded that if the premises were not totally destroyed, there was an obligation upon the landlord to repair, such obligation would go to the extent of restoration of the premises only to the condition they were in when the lease was executed, natural wear and tear excepted. That is to say, to the condition of an inferior-class floor and store front such as would have existed just prior to the fire if the better class of improvements installed at the expense of the assured had not been put in. This was the extent of the landlord's obligation. Were the landlord to discharge that obligation that would not restore the improvements which were the subject of the insurance, but a different class of improvements. The assured would be still left wholly without the class of such improvements which were put in at its expense, the portion of the value of which outlay remaining as a property interest in the assured at the time of the fire, being precisely what was insured, and not the inferior class of improvements. To again obtain the better class of improvements aforesaid, the assured would

have to put them in at its own expense, as it did originally, which expense, less the excess value to the assured of new over the value of the old improvements at the time of the fire, if there was any such excess value, would measure its loss. Such was the loss, to the extent of $7,500.00, against which it had taken out insurance. Figured at the monthly decrease in value fixed by the policy of insurance (which allowed both for depreciation in use and the vesting of title in the landlord, as the lease provided), such loss of the assured at the time of the fire was $8,416.92. There was no deduction to be made from this because of the value in the material in the improvements left undestroyed by the fire, because under the lease they belonged to the landlord, and not to the assured.

Further:

If the leased premises (which included other property than that which was mentioned in the insurance policy) had been totally destroyed by the fire without fault of the lessor (and there is no evidence in the case of such fault) there was under said lease no obligation on the landlord to restore the premises.

Hence, whether the destruction of the leased premises was total or partial, the assured had an insurable interest at the time of the fire in the subject of the insurance.

[2]   2. Was there a "total destruction" by fire of the improvements which were covered by the insurance contract at the time of the fire within the meaning of that contract?

This question also must be answered in the affirmative.

As appears from the statement preceding this opinion, there was not a total physical destruction of the material remaining in such improvements at the time of the fire. But as the result of the fire, none of such material could be used to restore the improvements to that class and condition in which they were imediately preceding the fire. This resulted in a loss to the assured of $8,416.92, as we have

37

above seen.   That, as we have also above seen; was a total loss to the assured of the whole value of the interest which it insured.   It is in truth a situation in which what would have been but a partial loss to an owner of the building, since he would have owned the material left undestroyed by the fire, was a total loss to the tenant, since the latter did not own the material, so that the sale or any use of it might minimize the damages, and since the material was so injured that it could not be used in the reconstruction of the class of improvements which the tenant needed in his business.   And in order to restore the improvements to their condition just prior to the fire required new material and a new outlay by the assured, as aforesaid.   We have thus presented a case certainly of "total loss" to the assured of the subject of the insurance as a result of the fire.

Does the use of the term "total destruction" in the contract of insurance render it inoperative to indemnify the assured against such loss?   If so, such construction of the contract would operate to defeat the assured from obtaining indemnity for the only interest which it in fact insured or could have insured, although there was a total loss of that interest.   The assured had no interest in any material left undestroyed by the fire, as aforesaid, if it was so injured as to be of no use to it for the particular purpose of the restoration aforesaid.   It would seem peculiar and not to be expected that the assured would enter into a contract and pay an insurance premium for indemnity for loss conditioned upon the "total destruction," in the ordinary meaning of those words, of property not its own (being of material in which it had no interest).   The language of a contract would have to be very plain to such an effect for it to receive that construction.

[3]   It is true that an insurance contract, like any other contract, must be construed in accordance with its terms. Its plain meaning must be given effect.   Courts cannot make

contracts for parties. But all of the provisions of the contract will be construed together, and seemingly conflicting provisions will be harmonized, when that can be reasonably done so as to effectuate the intention of the parties as expressed in the contract. And especially is this true as to insurance contracts, which, under well-settled rules, in case of doubt as to their meaning, are construed strictly against the insurer and liberally in favor of the assured.

A provision in the "rider" clause of the policy in suit expressly provides that "it is the intention of this insurance to indemnify *the insured* against fire *loss* to the property described. \* \* \*" (Italics supplied.) It is true that this provision is immediately followed by the language "only in case of total destruction by fire." But, taken together, even if considered separately from the other provisions of the policy, it cannot be said that the plain meaning of these provevent of "total destruction" of the property mentioned, in the event of total destruction" of the property mentioned, in the sense which would be given those words in an ordinary policy where the assured is absolute owner of the material composing the property insured. The words "total destruction" must be construed with the fact borne in mind that the policy is not an ordinary policy. And when we look to the beginning portion of the policy we see there the provision that the insurance company does insure the assured "against all direct loss \* \* \* by fire, except as hereinafter provided."

We are of opinion, therefore, that the reasonable construction of the policy in suit is that such a destruction of the property mentioned therein as would result in a "total loss" to the assured of the whole value of its interest in the property mentioned constitutes the "total destruction" stipulated in the policy.

Such is the case before us as we view it upon principle. When we come to consider the authorities cited pro and

con we find, as said in a learned note in 56 L. R. A., p. 784, dealing with the subject, that: "The courts have met with considerable difficulty in attempting to define the words 'total loss' and 'totally destroyed,' and apparently conflicting ·rules have been adopted." See also, *Phoenix Ins. Co.* v. *Port Clinton Fish Co.,* 14 Ohio Cir. Ct. R. 160; *Murphy* v. *American Cent. Ins. Co.,* 25 Tex. Civ. App. 241, 54 S. W. 407; *O'Keefe* v. *Liverpool, L. & G. Ins. Co.,* 140 Mo. 558, 41 S. W. 922, 39 L. R. A. 819; *Royal Ins. Co.* v. *McIntyre,* 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797; *Pennsylvania Fire Ins. Co.* v. *Brackett,* 63 Ohio St. 41, 57 N. E. 962, 81 Am. St. Rep. 608; *Corbett* v. *Spring Garden Ins. Co.,* 155 N. Y. 389, 50 N. E. 282, 41 L. R. A. 318. Many of the cases cited and cases referred to therein and in the note to 56 L. R. A., p. 784, aforesaid, turn, however, upon the fact that total destruction of *the building* insured was the stipulation in the policy, and they do not concern an insurance of a financial interest in the use of improvements of a certain character which compose a part of a building.

[4] However, we are relieved in the instant case from entering upon an interpretation of the authorities on a difficult and abstruse subject and from the attempt to deduce therefrom the principles of law applicable to the case before us, by the fact that the trial court gave an instruction which was asked for by the insurance company, and given as asked, which instruction presented to the jury the same conclusion of law as that which we have above reached with respect to the meaning of "total destruction" as those words are used in the policy in suit. That instruction is as follows:

"Instruction No. 3.—The court instructs the jury that under the terms of the policy of insurance sued upon in this proceeding, the plaintiff cannot recover unless the jury shall

believe from the preponderance of the evidence that the property insured was totally destroyed. The words 'total destruction,' as used in the policy sued on, do not mean the complete extinction or annihilation of the property, but do mean that the property must have been so injured that a reasonably prudent owner would not use the same in restoring it to its former condition, but would abandon it and construct the property anew."

Having asked for such instruction and the case having been tried upon the rule of law thus laid down, and the evidence for the assured having fully measured up to such rule, as appears from the statement of facts preceding this opinion, the insurance company is in this case bound by such rule of law.

It follows from what we have said, also, that we are of opinion, as an independent proposition, that such instruction correctly propounded the law as applicable to the policy of insurance in the instant case.

[5] 3. Can the insurance company maintain the complaint that the action of the trial court in giving the following instruction was error?

This question must be answered in the negative.

The instruction referred to is as follows:

"The court instructs the jury that the plaintiff in this suit had an insurable interest in the property insured under the policy in this suit regardless of the terms of the lease in evidence."

The insurance company assigns the giving of this instruction as error prejudicial to it in that it permitted the jury to disregard the terms of the lease. It would seem from the verdict that the jury did not avail themselves of such permission. If not, the objection to the instruction loses its force. But, in any event, the instruction could have been prejudicial to the insurance company only in case the assured had no insurable interest under the terms of the

lease, as was the contention of the insurance company.    As we noted above, the assured did have an insurable interest under the terms of the lease.    Therefore, the position of the insurance company on which such assignment of error rests is untenable, and hence the assignment of error itself cannot be maintained.

[6]    4. Was it error in the trial court to admit, over the objection of the insurance company, testimony tending to show what was the cash value of the interest of the assured in the improvements aforesaid at the time of the fire?

This question must be answered in the negative.

By the express terms of the "rider" provisions of the policy, the interest insured was the original cost of the improvements as of January 1, 1918, less, not only the monthly decrease named, but also "deductions for depreciation as provided in the printed conditions of this policy."    The printed conditions referred to are quoted in the statement preceding this opinion, and, as will be seen therefrom, they provided that the insurance company "shall not be liable beyond the actual cash value of the property at the time of loss.   *   *   *"    Hence, the testimony in question was relevant and admissible.

For the foregoing reasons, we find no error in the judgment under review, and it will be affirmed.

*Affirmed.*