12420

DeVORE v. PIEDMONT INSURANCE COMPANY

(142 S. E., 593)

EVIDENCE—PAROL TESTIMONY HELD ADMISSIBLE TO EXPLAIN MEANING OF AMBIGUOUS PROVISION OF POLICY AS TO LIMIT OF RECOVERY.— Where insurance contract was ambiguous in that phrase on first page of policy authorized full benefit from date of issue, while a clause further on limited recovery in case of death from certain named diseases within a year from date of policy, parol testimony was properly admitted to show and explain the true meaning thereof.

Before C. J. RAMAGE, SPECIAL JUDGE, Greenwood, October, 1925.    Affirmed.

Action by M. F. DeVore against the Piedmont Insurance Company.    Judgment for plaintiff, and defendant appeals.

*Messrs. W. H. Nicholson* and *R. F. Davis,* for appellant, cite: *Testimony must conform to the pleadings and be confined to the point in issue:*    49 S. C., 519; 84 S. C., 119; 69 S. C., 300; 103 S. E., 168.    *Evidence of waiver permitted without allegation of same:*    43 S. C., 46.    *Principles distinguished:*    67 S. C., 301.    *Parol testimony inadmissible to vary written contract:*    10 R. C. L., 1016–18, 1063; 74 S. C., 69.    *All parol negotiations are merged in the written contract represented by the policy and a parol agreement by the agent is not binding on the company:*    33 S. E., 954; 56 S. E., 915; Vance on Ins., 163, 348; 96 U. S., 547.    *Cases distinguished:*    130 S. C., 383; 70 S. C., 295.    *"Waiver":*    130 S. C., 1; 48 N. Y. S., 123; 54 S. C., 599.    *Power of agent to alter terms of policy:*    127 S. C., 213; 103 S. C., 501; 14 R. C. L., Secs. 340, 342, 344.    *Construction of policy:*    14 R. C. L., 925, 931, 934; 6 R. C. L., 836, Secs. 226, 227; Id., 841, Secs. 230, 232; Id., 847, Sec. 236; Id., 852, Sec. 241; 88 S. E., 834; 91 S. C., 572; 119 S. E., 481.

*Messrs. Mays & Featherstone,* for respondent, cite: *Parol testimony permissible to explain ambiguity in written instru-*

*ment:*   126 S. C., 346; 122 S. C., 314.   *An agent selling and delivering an insurance contract can waive certain provisions:*   130 S. C., 383; 70 S. C., 295; 74 S. C., 246; 48 S. C., 195, 223.   *Waiver can be proven without having been alleged:*   43 S. C., 26; 54 S. C., 599.   *Waiver is always a jury question:*   122 S. C., 314.   *Construction of policy:* 112 S. C., 139.

April 14, 1928.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This is an action commenced in the County Court for Greenwood County by service of a summons and complaint on the 10th day of February, 1925.   The complaint alleges the issuance by appellant to respondent two policies on the life of Mrs. Mattie C. DeVore, the wife of the respondent. The complaint set up two causes of action, the policy of date May 7, 1923, for $112, and policy of date December 8, 1924, for $165.   The complaint was based on the two policies of insurance, and alleges death of insured, waiver of proof of death, and refusal of payment.   The appellant tendered respondent full amount of the first policy and one-half of the other policy, which tender the respondent refused to accept.

After suit was brought the appellant paid respondent the full amount due on the first policy.   This left as the sole issue the amount due under the policy of date December 8, 1924.

The answer of the appellant set up three defenses which were:   (1) Fraudulent representation and concealment of her name and age in order to secure the policy of date December 8, 1924, in violation of the terms of the policy.   (2) Fraudulent concealment and misrepresentation of her physical condition in application for the issuance of the policy of date December 8, 1924.   (3) That under the terms of the said policy it is provided that in the event of death of the

insured during the first twelve months from date of insurance of said policy resulting from certain diseases mentioned in the policy, the amount due thereon was limited to one-half of the face amount of the policy, and that the insured died within twelve months from date of issuance and died from one of the diseases excepted in the policy and that one-half of the face of the policy was the full amount due.

The first policy contained no limitation of liability in case of death from certain diseases, and the appellant paid the full amount. The defendant at the close of its testimony withdrew the first and second defenses set out in the answer.

The exceptions are:

"(1) That his Honor erred in allowing the plaintiff, over the objection of the defendant, to testify as to statements and conversations of the agent of defendant at time of delivery of the policy, the error being that the testimony so admitted permitted the plaintiff to change his action, which he brought on a written contract of insurance to an oral contract.

"(2) That his Honor erred in allowing the plaintiff, over objection of defendant, to testify as to statements and conversations of the agent of defendant at time of delivery of policies; the error being that the parol testimony so admitted varied and contradicted the terms of the written contract.

"(3) That his Honor erred in refusing to construe the contract; the error being that the contract was free of all ambiguity or doubt and the Court should have construed it.

"(4) That his Honor erred in refusing to direct a verdict in favor of the plaintiff for the sum of $82.50, one-half of the face of the policy; the error being that it was admitted that the insured died within twelve months from date of issuance of the policy and died from one of the diseases excepted in the policy and under the terms of the policy the liability of the defendant was limited to one-half of the face of the policy.

"(5) That his Honor erred in submitting to the jury the issue of waiver; the error being that there were no acts or conduct on the part of the defendant warranting the submission of an issue of waiver."

Exceptions 1 and 2 are overruled.

Parol testimony is permissible to explain ambiguity in a written instrument. *Breedin v. Smith,* 126 S. C., 346; 120 S. E., 64. *Cooper & Griffin v. W. C. Cooke & Co.,* 122 S. C., 314; 115 S. E., 312.

In the latter case the Court stated the rule as follows:

"While it is unquestionably true that the construction of a written instrument, ordinarily, is a question to be determined by the Judge, and not by the jury, nevertheless that rule is not applicable when the writing is incomplete, or its provisions susceptible of more than one inference. In such cases parol testimony is admissible, and the inference must be drawn by the jury, under proper instructions from the presiding Judge."

An agent selling and delivering an insurance contract can waive certain provisions. *Hughes v. Insurance Co.,* 130 S. C., 383; 126 S. E., 125. *Madden v. Insurance Co.,* 70 S. C., 295; 49 S. E., 855. *Pearlstine v. Insurance Co.,* 74 S. C., 246; 54 S. E., 372. *Graham v. Insurance Co.,* 48 S. C., 195, 223; 26 S. E., 323; 59 Am. St. Rep., 707.

Respondent contends that the testimony was inadmissible because the complaint did not allege waiver. The plaintiff was not required to anticipate the defenses and allege waiver in the complaint. Waiver can be proven without having been alleged. *Copeland v. Western Assurance Co.,* 43 S. C., 26; 20 S. E., 754. *Kingman v. Insurance Co.,* 54 S. C., 599; 32 S. E., 762.

Exceptions 3, 4 and 5 are overruled.

The matter was properly submitted to the jury for two reasons: (1) Conflicting testimony as to the construction of an ambiguous written contract presents a jury question. The ambiguity in the instrument itself, when the conflicting

provisions are compared is patent. Furthermore, it was construed in one manner by M. M. DeVore as shown by the testimony of J. B. DeVore, and in another manner by the witness White, secretary of the company. *Cooper & Griffin v. Cooke,* 122 S. C., 314; 115 S. E., 312.

2. Waiver is always a jury question. There were three distinct facts presented by plaintiff tending to show waiver of the limitation to one-half benefits under certain conditions, any one of which was sufficient to send the case to the jury.

All exceptions are overruled, and judgment affirmed.

MR. JUSTICE STABLER (concurring) : On the first page of the policy this phrase appears : "Full Benefit from Date of Issue." Further on, in smaller type, a clause was inserted providing that in case the insured died from certain diseases named, within a year from the date of the policy, only one-half of the amount of the insurance would be paid. I am of the opinion that the language of the contract presents an ambiguity which made permissible the admission of the parol testimony offered by the respondent to show and explain its true meaning. On this ground I concur. See *Cooper & Griffin v. Cooke & Co.,* 122 S. C., 314; 115 S. E., 312, and authorities cited therein.

MR. JUSTICE BLEASE concurs.

MR. JUSTICE COTHRAN (dissenting) : This is an action in the County Court of Greenwood County, upon a policy of insurance upon the life of the plaintiff's wife, Mattie C. De-Vore, issued December 8, 1924, for $165, payable to the plaintiff. The insured died August 8, 1925. It is admitted that the insured died within 12 months after the insurance of the policy; that she died from chronic nephritis, inflammation of the kidneys, commonly known as Bright's Disease, from which, in chronic cases, recoveries are rare.

The defendant tendered to the plaintiff beneficiary one-half of the amount of the policy, claiming that under the

following provision in the policy, its liability was limited to that proportion of the amount of the policy:

"This policy contains the entire agreement between the company and the insured and the holder or owner thereof. Its terms and conditions cannot be changed or varied, except by a written agreement signed by the president or secretary of the company, and agents are forbidden to receive or receipt for premiums on policies more than four weeks in arrears.

"If the age of the insured has been misstated, the amount payable shall be such as the premium paid would have purchased at the correct age.

"*In the event of the death of the insured during the first twelve months from the date of this policy resulting from* tuberculosis, disease of the heart or blood vessels, *nephritis or disease of the kidneys,* one-half of the amount will be paid which would be payable under the policy contract for death resulting from any other cause."

The case was tried before his Honor, C. J. Ramage, Special Judge, at the October term, 1925, and resulted in a jury verdict in favor of the plaintiff for the full amount claimed.

Motion for new trial was refused by the presiding Judge, and from the .judgment entered upon the verdict the defendant has appealed.

There are no statements in the transcript essential as a basis for Exceptions 3, 4 and 5; they cannot therefore be considered.

Exceptions 1 and 2, in different form, raise the question of the admissibility of certain oral testimony of an alleged statement of the company's agent at the time of the delivery of the policy. That is the only question that I consider involved in the appeal.

Upon the examination of J. B. DeVore, a brother of the plaintiff, who made the application for insurance on behalf of his brother's wife, the following testimony was received

over the objection of the defendant that it varied and contradicted the terms of the written policy, which constituted the entire contract between the parties. "Mr. M. M. De-Vore, the agent, told me that the full amount of the policy would be paid in the event of death; he said I would get full benefit from the policy the next day after death." The policy provides that the full amount of the insurance *would not be paid,* but only one-half, in the event that the insured should die within .12 months and of nephritis. She died within that period and of that disease, as is admitted.

The tendency of that which was received *as evidence,* and which the average jury is prone to extend to its full limit, particularly enjoined by the authority of the presiding Judge to consider it, was absolutely destructive of the solemn, written contractual engagements of the parties; the establishment of a contract entirely different from that which had been entered into.

In the case of *Gladden v. Keistler,* 141 S. C., 524; 140 S. E., 161, the Court in an elaborate opinion by Mr. Justice Stabler declares:

"A case, however, that is closely parallel to the present case is *Blackwell v. Faucett,* 117 S. C., 60; 108 S. E., 295. In that case it was attempted to be shown by parol evidence that a written contract for the sale of land included also a lot of shingles and cement on the premises. The testimony was disallowed, and Mr. Justice Cothran, speaking for the Court, made a very clear statement of the law: 'There is no more wholesome rule of law, in my opinion, than that announced in *Lagrone v. Timmerman,* 46 S. C. [372] 411; 24 S. E., 290 [299]: "When the parties have reduced their contract to writing, the Court can only look to the terms in which the parties have expressed their intention in such writing." And quoting from 1 Greenl. Ev., § 275: "When parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it

is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or a conversation or declaration at the time when it was completed or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." When a writing, upon its face, imports to be a complete expression of the whole agreement, and contains thereon all that is necessary to constitute a contract, it is presumed that the parties have introduced into it every material item and term, and parol evidence is not admissible to add another term to the agreement, although the writing contains nothing on the particular item to which the parol evidence is directed. 16 R. C. L., 1030.' "

See, also, 10 R. C. L., 1016, 1018, 1063.

In *Kentucky Co. v. People's Co., 77* S. C., *92;* 57 S. E., 676; 122 Am. St. Rep., 540, the controversy arose out of a shipment of wagons which the defendant agreed to keep insured until sold and the proceeds remitted to the plaintiff. The contract provided that the defendant should "keep the wagons *fully insured* from loss or damage by fire." Following loss of the wagons by fire the plaintiff brought suit on the agreement. The defendant contended that it had complied with the terms of the agreement when it took out a policy with a provision that the insurance company would only be liable in case of loss to the extent of three-fourths of the value of the property insured. In reversing the trial Court, the Supreme Court held:

"If the parties have used words which have an ordinary meaning, free from ambiguity and no technical meaning is shown, extrinsic evidence is inadmissible to show that the parties used such terms in a sense different from their ordinary meaning, as the only effect of such evidence would be to contradict the legal effect of the language which the par-

ties themselves used."    (A quotation from 2 Page, Contracts, § 1111.)

The Court pertinently observes:

"The charge would have been free from error if the testimony had been *explanatory* instead of *contradictory* of the terms of the agreement."    (Italics by Court.)

In *Sellers v. Railroad Co.,* 77 S. C., 361; 57 S. E., 1102, the Court said:

"The construction of a written instrument presents a question of law, to be determined by the Judge, and is not to be submitted to the jury, unless its language is ambiguous, requiring explanatory testimony."

In *Forbes v. Pearson,* 87 S. C., 67; 68 S. E., 964, the Court said:

"Where doubt arises as to the meaning of the words used in a contract, for the enlightenment of the Judge or jury, parol evidence may be admitted of the signification the words have according to the usage of those accustomed to make contracts of this kind, but such evidence is not admissible when the meaning of the language is plain."

See, also, *Armour v. Hyman,* 120 S. C., 375; 113 S. E., 330.

In *Lewis v. Wilson,* 108 S. C., 47; 93 S. E., 242, the Court held (quoting syllabus):

"Parol agreement to renew note from year to year for definite time upon payment of interest, although made to induce written contract to pay on a fixed date, contradicts the writing, and is incompetent."

See, also, *Arthur v. Brown,* 91 S. C., 316; 74 S. E., 652. *Cline v. Oil Mill,* 83 S. C., 204; 65 S. E., 272.    *Cape Fear Co. v. Evans,* 69 S. C., 93; 48 S. E., 108.

In *McGrath v. Ins. Co.,* 74 S. C., 69; 54 S. E., 218, a witness had testified to an alleged statement by the agent, at the time he received the application for insurance and receipted for the premium, that the property was insured from the time the receipt was given.    The application stated that

the insurance should not take effect until the application had been accepted by the home office. (In principle precisely the question presented in the case at bar.) The testimony was held by this Court, reversing judgment for the plaintiff, inadmissible as violating the parol evidence rule.

Furthermore, it was held that the plaintiff was presumed to have known that the agent had no authority to make such a statement, as the declarations were in conflict with the express stipulations in the application requiring acceptance at the home office as essential to such contract.

In *Insurance Co. v. Mowry,* 96 U. S., 547 (24 L. Ed., 674), the Court said:

"The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions other than those intended were inserted or stipulated provisions were omitted, the parties could have had recourse for a correction of the agreement to a Court of Equity, which is competent to give all needful relief in such cases. But, until thus corrected, the policy must be taken as expressing the final understanding of the assured and of the insurance company."

In *Floars v. Ins. Co.,* 144 N. C., 232; 56 S. E., 915, the Court said:

"The written policy while it remains unaltered will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; nor will evidence be received of prior parol inducements and assurances to contradict or vary the written policy while it so stands as embodying the contract between the parties."

This Court has held in *Jeter v. Life Ins. Co.,* 127 S. C., 213; 121 S. E., 204, that: "In an action on an insurance policy defendant is entitled to show the extent of the authority intrusted to the agent writing the policy, and whether the agent was acting within his authority." Assuming that the agent did make the statement attributed to him, the state-

ment amounted to nothing more than a misstatement as to the legal effect of the policy · and the observations of the Court in *Oil Co. v. Southern Railway*, 103 S. C., 494, 500; 88 S. E., 360, 362, are pertinent (opinion by Chief Justice Watts) :

"Every one is presumed to know the effect of a contract that he signs, and *misrepresentations as to the legal effect made to him by the other party will not invalidate the contract.* The plaintiff had no right to rely on the statements made as to what the legal effect of the contract would be. * * * It would be disastrous to contracts to allow the plaintiff to avoid the contract and escape liability on the plea that a misrepresentation had been made to him as to its legal effect."

In *Northern Co. v. Grand View Association*, 183 U. S., 308; 22 S. Ct., 113; 46 L. Ed., 213 (quoting syllabus), it was held :

"It is a fundamental rule in Courts both of law and equity, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, unless in cases where the contracts are vitiated by fraud or mutual mistake. * * *

"Contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot, by the Courts at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts *and this principle is applicable to cases of insurance contracts.*"

In that case (183 U. S., 308; 22 S. Ct., 133; 46 L. Ed., 213), the Court quotes the following from the case of *Franklin Ins. Co. v. Martin*, 40 N. J. Law, 568; 29 Am. Rep., 271, with strong approval :

"Upon principle, it is impossible to perceive on what ground such testimony should be received. A policy of insurance is a contract in writing, of such a nature as to be within the general rule of law that a contract in writing can-

not be varied or altered by parol testimony. If it be ambiguous in its terms, parol evidence, such as would be competent to remove an ambiguity in other written contracts, may be resorted to for the purpose of explaining its meaning. If it incorrectly or imperfectly expresses the actual agreement of the parties, it may be reformed in equity. If strict compliance with the conditions of insurance, with respect to matters to be done by the insured after the contract has been concluded, has been waived, such waiver may, in general, be shown by extrinsic evidence, by parol. Further than this, it is not safe for a Court of law to go. To except policies of insurance out of the class of contracts to which they belong, and deny them the protection of the rule of law that a contract which is put in writing shall not be altered or varied by parol evidence of the contract the parties intended to make, as distinguished from what appears, by the written contract, to be that which they have in fact made, is a violation of the principle that will open the door to the grossest frauds.  *  *  *  A Court of law can do nothing but enforce the contract as the parties have made it. The legal rule that in Courts of law the written contract shall be regarded as the sole repository of the intentions of the parties, and that its terms cannot be changed by parol testimony, is of the utmost importance in the trial of jury cases, and can never be departed from without the risk of disastrous consequences to the rights of parties."

"If parol evidence were admissible to vary a written contract of insurance, then all prior negotiations, correspondence, proposals and other acts would become as much a part of the contract as though actually embodied in the policy, and it could never be known exactly what the terms of the contract were, except perhaps after extended litigation, and the safe-guard which a policy ought to afford would be valueless if its terms could thus be added to or limited. It is, therefore, a general rule that all prior negotiations are considered as waived or merged in the written contract, and

that in the absence of fraud, duress, or mistake, parol evidence is inadmissible to contradict its terms.   The entire engagement of the parties, with all the conditions upon which its fulfillment can be claimed, must be conclusively presumed to have been stated in the policy, as the terms of the policy when explicit must control."   1 Joyce Ins. (2d Ed.), § 185.

Again, at Section 185a:

"But a policy cannot be changed or altered by parol evidence where the party be named and his interest specified, except fraud or mistake be alleged.   The intent as shown by the instrument itself must be sought, since the same principles of construction obtain in this regard as in other written contracts."

It is suggested in the leading opinion that there is an ambiguity in the contract of insurance, and that, for that reason, the parol evidence was inadmissible for the purpose of resolving that ambiguity, a matter to be submitted to the jury.   The supposed ambiguity is based upon the fact that upon the first page of the policy, immediately following the signatures of the officers, this expression occurs:   "Full benefit from date of issue."   And on the second page there is printed, *"in smaller type"* (a fact to which some significance appears to be attached), the clause:   "In the event of the death of the insured during the first twelve months from the date of this policy resulting from  *  *  *  nephritis *  *  *  one-half of the amount will be paid which would be payable under the policy contract for death resulting from any other cause."

The most that can possibly be said of this combination of clauses is that it presents a case of *conflicting provisions* in no sense a case of *ambiguity,* upon the theory that the first clause confers upon the insured the benefit of the *full amount of insurance,* regardless of the time or cause of death, while the second clause limits recovery to one-half of the amount of the insurance in the event of death within one year from any one of the indicated causes.

I do not agree to the proposition at all that the clauses are inconsistent or conflicting. The first clause does not provide that the insured shall receive the benefit of full *insurance* from the date of its issue; but that from that time she shall receive "full benefit"; necessarily referring to the *contract* of insurance, which shall be effective "from the date of issue," with all of its conditions and limitations, "each of which" (by the express terms of the policy) "is hereby made a part of this contract." The clause manifestly was intended simply to fix the date upon which the contract shall become effective.

But, assuming that the clauses are inconsistent and contradictory, the rule in such cases is clearly stated in *Corpus Juris* as follows:

"Where two clauses are inconsistent and conflicting, they must be construed so as to give effect to the intention of the parties *as collected from the whole instrument,* and apparently conflicting provisions must be reconciled if possible, by any reasonable interpretation, it being necessary for this purpose to consider the entire instrument and the surrounding circumstances." 13 C. J., 535.

"In the construction of an instrument in writing, clauses should not be construed as repugnant if by any reasonable interpretation they can be reconciled so as to give force and effect to each." *Ferguson v. Ins. Co.,* 187 Mass., 8; 72 N. E., 358.

In *Brady v. Bridge Co.,* 76 S. C., 297; 56 S. E., 964, it was held (quoting syllabus):

"If two provisions of a contract must be regarded repugnant, that which is first mentioned must prevail, *if it is in harmony with the other parts of the contract.*"

Where the clauses of a contract are repugnant, the earlier prevails, if the inconsistency be not so great as to avoid the instrument for uncertainty. *Vickers v. Electrozon Commercial Co.,* 67 N. J. Law, 665; 52 A., 467. In construing a contract, all the provisions thereof should be taken into

consideration and reconciled, if possible, so that the true intent of the parties may be ascertained. *Barber v. Ins. Co.,* 16 W. Va., 658; 37 Am. Rep., 800. Where two clauses in a contract are inconsistent, they must be so construed as to give effect to the intention of the parties as gathered from the whole instrument. *Bent v. Alexander,* 15 Mo. App., 181. "It is a cardinal rule of the interpretation of mutual contracts," that one part is not to be abrogated or impaired "by another, when that other has an appropriate meaning which fully satisfies the words." *Hazleton Co. v. Buck Co.,* 57 Pa., 301.

In *Smith v. Clinkscales,* 102 S. C., 227; 85 S. E., 1064, it was held (quoting syllabus) :

"The purpose of construction is to ascertain the intention as gathered from the whole instrument and to give effect, if possible, to every clause and word, if it can be done without violating any settled rule of law. Of two irreconcilable repugnant·clauses, the first shall prevail, *though this rule is to be applied only when all reasonable modes of reconciling the apparent repugnancy have failed,* and subject to the rule that the intention gathered from the whole instrument shall prevail."

"It is only when the parts of a contract are so radically repugnant that" no rational interpretation "will render them effective and accordant that any part must perish." *Rushing v. Ins. Co.* (C. C. A.), 224 F., 74. *Ins. Co. v. Adams,* 84 Ark., 431; 106 S. W., 209. *Ford Lumber Co. v. Clement,* 97 Ark., 522; 135 S. W., 343.

"Apparently contradictory stipulations in a contract must be harmonized * * * if possible, because both could not have been intended in the contradictory sense." *Southern Co. v. McGeehan,* 144 Wis., 130; 128 N. W., 879. *Collins v. Portland Electric Power Co.* (D. C.), 7 F. (2d), 221.

"No provision of contract is to be disregarded as inconsistent with other provisions, unless no other reasonable con-

struction is possible." *Cliffe Co. v. DuPont Co.* (D. C.), 298 F., 649.   *U. S. v. Bentley* (D. C.), 293 F., 229. *American Co. v. Bartman* (C. C. A.), 261 F., 661.  *Smith Co. v. Eckert,* 21 Ariz., 28; 184 Pa., 1001; 7 A. L. R., 995. *Phœnix Co. v. Shulman,* 125 Va., 281; 99 S. E., 602. *Guaranty Co. v. Mexican Co.* (D. C.), 245 F., 901.

Following this rule, the supposed inconsistency ·is easily explicable by adopting the interpretation that "full benefit" meant *full benefit of the contract* as it stood, and not the benefit of the full insurance.

The combination of the clauses in question constituting at best a case of repugnant provisions, it is legally impossible that there should be presented a case of ambiguity; certainly not a case of *latent* ambiguity, justifying the admission of parol evidence.   The truth of the matter is that the purpose of this evidence is not to clear up a doubt or uncertainty; none exists; but to entirely change that which is perfectly clear; to make the contract cover a condition which it unequivocally declares it shall not cover.   There can be no misunderstanding or room for controversy as to what the quoted clause in the policy means.

Webster defines "ambiguous" as "doubtful or uncertain, * * * capable of being understood in either of two or more senses, equivocal."

There can be no conflict between the first and second clauses unless the first clause be susceptible of the possible inference that it meant to confer upon the insured the benefit of the full amount of the insurance, no matter what happened; the second clause limiting the recovery to one-half under the conditions stated.   That as I have endeavored to show would present a case of contradictory or repugnant provisions; not at all a case of ambiguity; most certainly not a case of latent ambiguity to resolve only which parol evidence is admissible.

The only possible ambiguity that could exist, if it could be so denominated, is a question of the construction of the

policy, considering both clauses, and conceding that upon
their face they are inharmonious; a *patent* and not a *latent*
ambiguity, if an ambiguity at all.

The difference between the two, as I understand it, is that
a patent ambiguity is one that arises upon a consideration of
the words of the instrument, as viewed in themselves, with-
out reference to their application to the object which they
describe; a latent ambiguity is one that arises, not upon a
consideration of the words of the instrument, as viewed in
themselves, but upon those words when applied to the object
which they describe.    2 C. J., 1313.

A patent ambiguity may be so glaring as to annihilate the
instrument for indefiniteness and uncertainty, or it may be
such as to call for the rule of construction against the author
of the instrument.    In either event, the matter is one for the
Court and not for the jury.    A latent ambiguity does not
appear upon the face of the words, nor is its existence known
until those words are brought in contact with collateral, ex-
traneous facts.    It seems to me clear that patent ambiguities
are for resolution by the Court; latent ambiguities by the
jury, upon proof of the collateral, extraneous facts.

In this case there is no suggestion of collateral facts
creating a latent ambiguity, and the Circuit Judge should
have construed the policy.

In 1 C. J., 414, it is said:

"In case there is an ambiguity in the policy the rule is that
all provisions, conditions, or exceptions which in any way
tend to work a forfeiture of the policy or limit or defeat lia-
bility thereunder should be construed most strongly against
those for whose benefit they are inserted, and most favorably
toward those against whom they are meant to operate, and
this rule is applicable to purely benefit accident policies as
well as the ordinary accident policy.    Accordingly the Court
will adopt the construction most favorable to the insured
when a doubt arises in respect to the application, exceptions
to, or limitations of liability, or clauses creating a forfeiture

or relating to matters subsequent to the attaching of the liability, the rule being especially applicable to the latter"— indicating, beyond a doubt, that the ambiguity of the character described must be resolved by the Court.

In 13 C. J., 785, it is said: "Where the terms of a contract are ambiguous, and their meaning is to be determined from extrinsic evidence which is conflicting, a question is presented for the jury. * * * Where extrinsic evidence is not required to determine the meaning of the contract, its construction is for the Court"—which is but another way of saying that latent ambiguities are for the jury; patent ambiguities for the Court.

In *Granite Co. v. Monument Co.,* 91 Vt., 177; 99 A., 875, it is held, quoting syllabus:

"In the absence of latent ambiguity, it is for the Court to construe a written contract."

To constitute a latent ambiguity, the meaning of the terms must require the aid of extrinsic facts in the interpretation, under which circumstances alone is the construction to be submitted to a jury. *Schneider v. Neubert,* 308 Ill., 40; 139 N. E., 84. *Ringrose v. Sloane* (D. C.), 266 F., 402. *Modern Woodmen of America v. Hall,* 190 Ind., 493; 130 N. E., 849. *Sunshine v. Furtick,* 114 S. C., 32; 102 S. E., 784.

In *Russell v. Arthur,* 17 S. C., 477, the Court said:

"There was no evidence of the contract except the defendant's letter * * * and we think it was error in the Circuit Judge to refer the construction of that letter to the jury instead of construing it himself. The fact that it was obscure and inconsistent in its different parts, making it difficult to understand, could not alter the rule that the Court and not the jury should construe a contract in writing"—citing *Bank v. Heyward,* 15 S. C., 296. *Mowry v. Stogner,* 3 S. C., 253.

"Where there is a doubt as to the meaning of a contract in writing arising from the language used, and not from extrinsic matters, the question as to what the parties meant is

for the Court, and not the jury." *Penn v. Hare* (Tex. Civ. App.), 223 S. W., 527.

"The construction of a contract is always a matter of law for the Court, no matter how ambiguous or uncertain or difficult its terms, and the jury can only assist the Court in determining disputed fact questions." *O'Connor v. West Co.,* 189 Cal., 7; 207 P., 527.

Even in the case of a latent ambiguity, if there is no conflict in the evidence, the question is one of law for the Court.

The construction of the contract, therefore, not involving a latent ambiguity, but at best a patent ambiguity, was a matter for the Court; in that construction he should have held that the policy contract was binding and directed a verdict for one-half of the amount of insurance.

The policy contains the following provision:

"This policy contains the entire agreement between the company and the insured and the holder or owner thereof. Its terms and conditions cannot be changed or varied, except by a written agreement signed by the President or Secretary of the company, and agents are forbidden to receive or receipt for premiums on policies more than four weeks in arrears."

No reason has been or can be suggested why this provision should not be respected.

In *Northern Co. v. Grand View,* 183 U. S., 308; 22 S. Ct., 133; 46 L. Ed., 213, the Court held:

"It is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered."

See, to the same effect, our own cases of *Oxweld v. Davis,* 115 S. C., 426; 106 S. E., 157. *Colt v. Britt,* 129 S. C., 226; 123 S. E., 845.

The Circuit Judge, in my opinion, committed reversible error in submitting the issue of waiver to the jury. There

was no such question in the case.   The plaintiff did not claim that the company had waived any condition of forfeiture in the policy; the defendant was not insisting upon any forfeiture; it was simply standing upon the terms of the contract, that if the insured should die within 12 months and of nephritis, which she admittedly did, it was liable for only one-half of the policy.   It seems to me that when the Court essays to enforce contracts as they are made and destroys its positive terms by the loose conception which an agent or a beneficiary may have had of its proper construction, it is but "keeping the promise to the ear and breaking it to the hope."

As Mr. Wigmore truly expresses it:

"The original prohibitory exception is based on the risk of allowing an extrinsic utterance of intent to come into competition with the terms of the document on the same subject, and perhaps to prevail against them."   4 Wig. Ev. (1st Ed.), p. 3503.

The testimony was offered, not for the purpose of showing a waiver of any provision in the policy, but to set up an entirely different contract from that contained in it by the clearest possible terms.

Nor can such testimony be admitted to show an estoppel. In 10 R. C. L., 1017, it is said:

"Any theory that proof of prior and contemporaneous negotiations and representations though not admissible to vary the legal effect of the written contract, may be received for the purpose of raising an estoppel *in pais,* has been held by the highest authorities to be a mere evasion of the salutary rule which protects written contracts from impeachment by loose collateral evidence and upon principle and authority is not tenable."   *Insurance Co. v. Buchanan* (C. C. A.), 141 F., 877; 4 L. R. A. (N. S.), 758.

I think that the defendant's motion for a directed verdict should have been granted, and that, at the least, a new trial should be ordered.

Mr. Justice Carter concurs.